No. 12,196.

SOUTHERN INSURANCE COMPANY VS. BOARD OF ASSESSORS ET ALS.

The levying of taxes is for the "calendar years," and the "assessment" of property for the "purpose of levying" the "annual taxes" is likewise for the calendar year. So when the law provides that assessment is to be begun on the 2d of January and completed on the first day of March, it contemplates an assessment on the basis of the condition of things existing on the 1st of January. Home Insurance Company vs. Assessors, 48 An. 41, affirmed.

APPEAL from the Civil District Court for the Parish of Orleans.
*Théard, J.*

Denègre, *Blair & Denègre* for Plaintiff, Appellee.

26

*Samuel L. Gilmore*, City Attorney, and *James J. McLoughlin*, Assistant City Attorney, for Defendants, Appellants.

Argued and submitted February 4, 1897.
Opinion handed down February 15, 1897.

### STATEMENT OF THE CASE.

The plaintiffs alleged that in making up the assessment rolls for the year 1895 the Board of Assessors for the parish of Orleans assessed them, under the head of "money in possession," etc., in the sum of ninety-five thousand nine hundred and thirty dollars, claiming to base said assessment upon their annual statement for the year 1894.

That said assessment was excessive and erroneous, and should not have been made; that in the above ninety-five thousand nine hundred and thirty dollars are included the amount of unadjusted losses due by plaintiffs outstanding at the date of the statement, all of which amount was paid in the early days of January or February, 1895, and ceased to exist before the assessment rolls were closed or completed, and could not and should not have been counted as assets of petitioners liable to taxation within the year 1895.

Petitioners averred that precisely the same issue had been determined in favor of petitioners against the defendants in suits brought by them in suits Nos. 35,994 and 44,087 of the Civil District Court, and the petitioners pleaded the judgments therein as *res judicata*. Petitioners prayed that they have judgment reducing the assessment from ninety-five thousand nine hundred and thirty dollars to fifty-nine thousand and twenty-six dollars, and that the State Tax Collector and the city of New Orleans be ordered to receive taxes for the year 1895 upon said amount of fifty-nine thousand and twenty-six dollars without interest.

The State Tax Collector and the city of New Orleans answered that the assessment complained of was lawful and correct, and should be maintained.

The District Court rendered judgment in favor of the plaintiffs, reducing the assessment to fifty-nine thousand and twenty-six dollars, and ordering the State Tax Collector and the city of New

Orleans to receive from the plaintiffs taxes for the year 1895, upon said amount without interest or penalties, and ordered defendants to pay the costs of suit.

They appealed.

———

The opinion of the court was delivered by

NICHOLLS, C. J.    Counsel for plaintiffs urge in this court the . exception of *res judicata* pleaded below, based upon the judgments in their favor in the suits Nos. 32,994 and 44,087 of the Civil District Court.    They say that precisely the same issue was presented in those cases as is presented here, and that it was raised and decided between the same parties.    The suits involved the assessments of 1891 and 1894.    The judgments referred to not having been appealed from, fixed the rights of the parties as involved in that particular litigation.    Their effect extended no further.

On the 29th of January, 1895, the plaintiff company made their assessment return to the Board of Assessors.    In that return we find the following statement:

Money in possession on deposit or in hand................ ..........................................$95,929
Less reserved for paid (payment of?) losses ............. ..... ..... ...............................  36,903
                                                                                                          ————
                                                                                                        $59,026

The assessors in making out their own assessment do not seem to have given the company credit for the thirty-six thousand nine hundred and three dollars which on their return list they had deducted from the ninety-five thousand nine hundred and twenty-nine dollars on hand, on the score that that amount was held by them in reserve fund for the payment of losses, but charged the plaintiffs as being assessable on the whole ninety-five thousand nine hundred and twenty-nine dollars, for we find that on the 11th of March, 1895, application was made to the board for a reduction to make their assessment conform to their list. This application was refused and this suit followed.

It is contended by the plaintiffs that the amount of thirty-six thousand nine hundred and three dollars which figured on their return as reserve fund for payment of losses was in point of fact paid out between the first of January, 1895, and the 11th of March, 1895; that the company never had on hand after the 11th of March even the amount of fifty-nine thousand and twenty-six dollars on which they were and are still willing to have their assessment based. They contend the evidence shows the following condition of affairs

The company had on hand December 31, 1894 ................................ .......... ........ .....$95,929
January 20, 1895, cash on hand ........... .......... ..... ...... ... ..... ..... . ............ ...... .. .. 45,511
February 28, 1895, cash on hand.......................... .......... ........... .......... ................ ...... 25,526
The amount of losses for the year 1894 paid out during the months of
January, 1894, amounted to.. .... ............... .......... .... .... ................................ 40,742

Their position is thus stated in their brief: "We contend that the law contemplates the state of affairs existing or values existing on the first day of March of each year, the date upon which the rolls are completed, the assessment up to that time being inchoate, and that as it appears that on that day the company had but twenty-five thousand five hundred and twenty-six dollars and fifty-four cents cash on hand the application for a reduction to fifty-nine thousand and twenty-six dollars can not be contested, because actually a demand of less than the company were entitled to demand.

"From a statement of the issue thus presented to the court it is evident that they are not similar to those in Home Insurance Company vs. Board of Assessors, 48 An. 451, relied on by defendants in this case. ,

"Section 1 of the revenue act of 1890 declares as taxable all cash, without mentioning as of what date the cash is to be estimated.

"Section 24 of the act provides that the board shall meet on the 2d day of January, and complete their assessment by the 1st day of March of each year, and provides for daily meetings.

"The former acts provided a day upon which the valuation of cash was to be made. The revenue act of 1888 provided for the assessment of 'all cash on hand on the day upon which the notice is served to make return of taxable property, in conformity with this act' and provided that 'cash on hand' must represent the full amount standing in the name of the person to be assessed, or subject to his control on the day above mentioned. 'A change having been made in the law, it must be presumed it was done by design, and to establish a different rule, especially as the Act of 1890 is an amendment to the Act of 1888, and therefore clearly shows the intention of the Legislature to abolish the old and substitute a new rule for the valuation of cash on hand. Under these circumstances, we contend that the new rule fixes the date as of the day upon which the rolls are completed, since there is no assessment until on that date. * * * If this be not the true rule, it is difficult to know what the true rule is. No other guide can be found, unless it be that as by Sec. 28 of the Act of 1890 corporations are called upon to make sworn returns within the first twenty days of January of each year,

it could be held that the condition of the company on the 21st of January is to be taken as the proper basis of assessment.    *    *    * It seems to us clear that our contention is correct, and that a consideration of the act shows that the assessment is made as of date the 1st of March; that the assessors are given the whole of January and February to gather information simply as a basis for their action upon that day." Counsel in argument, selected by way of illustration a number of special cases by which they sought to show the injustice or injury which would be done either to the State or to individual taxpayers by not adopting the theory advanced by them, but that is not a proper method of dealing with the subject. The assessment of property for the purpose of taxation and the levying of taxes upon the assessment of property has to be considered as a system and not from a consideration of the results good or bad which may result therefrom in particular instances. Cases of individual hardship or inequality will result no matter what system may be adopted. What is necessary is that there should be some fixed rule established withdrawing from officials and from the taxpayers themselves a power of control over the performance of their duties. What might in some particular year under a fixed rule lead up to apparent hardship or injustice against the taxpayer, would the next, under the operation of the same rule, lead up to an apparent hardship or injustice to the State. The hardship or the benefits of a system will during a serious of years doubtless be found to be equalized or compensated. We think the plaintiffs took a correct view of the law, when on the 29th of January they made a return showing the condition of the company's cash account, not as of that day, but as of the first of January, 1895. The "levying" of taxes is for "calendar years," and the "assessment" of property for the "purpose of levying" the "annual taxes" is likewise for the calendar year. That this is the correct rule is manifest from reading the Constitution itself and the various revenue laws levying taxes. If one citizen were to make his assessment on the 2d of January, another on the 10th of January, another on the 1st of February, another on the 15th of February, there would not be that uniformity as much demandable in matters of assessment as there is in the establishment of the rate of taxation. Plaintiffs concede that there should be some fixed date determining the righis of parties, but they contend that that date is fixed as of the 1st of March, when the assessments

are closed.  We are not of that opinion.  It is true that there is a period of time between the date when the business of assessment commences, and that upon which it is ordered to be closed, but that is because in the nature of things the assessors can not make the assessment over an extended territory in one day, and it is true that during that open period the taxpayer may make his return for assessment purposes, but when he does so he is expected to make it on the basis of the condition of things existing on the 1st of January.  It is true that if there be "errors" in the assessment lists or in the assessment as made by the officials themselves, they are subject to correction, but a correction of " errors " is something different jrom an alteration of assessment.  If the plaintiffs, after making their return, showing that they had on hand ninety-five thousand dollars on the 1st of January, had afterward discovered that they had on hand on that date only twenty thousand dollars, they could properly have applied for a " correction " of their list, but if having in fact on the 1st of January the amount they had stated they then held, they should apply to have the amount reduced, because, on the 1st of February, or some other day named, they had less than that ninety-five thousand dollars, they would seek, not a correction, but an alteration of their return.  If plaintiffs' theory be true that the date that the assessment is ordered to close is to be taken as that fixing the date of the situation of individual taxpayers as to the objects on which they are taxable, and the valuation of the same, it is clear that what is intended to be the ending of the assessment, except for " corrective " purposes, would be practically the beginning of the assessment, for very naturally the situation of almost every taxpayer would have been more or less altered between the 2d of January, when the assessors are directed to commence their work, and the date when they close the same.  It would be impossible for those officers in the short time allotted to them for the " correction " of the rolls to made a " revision " of the same through new lists not " corrected," but altered to conform to changed conditions.

Counsel refer us to Welty on Assessment, page 49, and the cases of Mygatt vs. Washburn, 15 N. Y. 320, and Clark vs. Norton, 49 N. Y. 243, but we find nothing therein which induces us to alter our views on the particular point presently submitted to us.  There may be subordinate questions connected with the subject as to when

assessments are to be taken as beginning and ending the decision of which may be affected by viewing the situation of parties, and of property as of a date later than the 1st of January. We will postpone any expression upon them until particular cases arise making such expression necessary.

With reference to the present demand we are of the opinion that it is controlled by the decision in Home Insurance Co. vs. Board of Assessors, 48 An. 451.

For the reasons herein assigned, it is ordered that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that plaintiffs' demand be and the same is hereby rejected with costs of suit in both courts.