LAND, J.
The plaintiffs in these consolidated suits obtained judgments in the court below annulling as illegal certain assessments for 1903 made against them of buildings and improvements constructed several months after the 1st of January of said year. It appears in all of these cases that the land was assessed to the owner according to law, and that about June 20, 1903, the assessor, *1063 on his own motion, made an additional assessment of the buildings and improvements constructed or in the course of construction thereon.
In the case of the Bunlrie Brick Works, Limited, the land on which the brick factory was erected was assessed to Samuel Haas, and was not conveyed to the company until July 13, 1903. Work was commenced on the factory during the latter part of March, 1903, and at the date of the assessment complained of the factory was in course of construction.
In the case of A. B. West the lot was properly assessed to him. He commenced building a dwelling thereon during the latter part of May, 1903, and the house was finished about the middle of July following. In the case of A.* J. Moule the building was commenced the latter part of May, and was not completed until September 1st following. The lot was assessed to Samuel Haas, who had promised to sell to Moule, but no title had passed. In the case of J. O. Ward the facts are the same as in the Moule Case.
In all four cases the common contention is that the listing of the buildings and improvements commenced after J anuary 1, 1903, and in course of construction when the assessments were made in June, 1903, was illegal, for the reason that the same were not liable for taxation for the year 1903.
We have held in several cases that our revenue laws contemplate an assessment on the basis of the condition of things existing on the 1st day of January of each year. See Insurance Co. v. Board of Assessors, 49 La. Ann. 401, 21 South. 913; Palfrey v. Tax Collector, 106 La. Ann. 699, 31 South. 148.
In the case last cited, growing timber was sold on February 20, 1900, and was assessed to the purchaser. This court annulled the assessment, holding that the assessment of the land was of date January 1, 1900, and necessarily included the growing trees thereon.
Act No. 170 of 1898 requires all insurance companies to make a sworn report to the Secretary of State of their condition upon the preceding 31st day of December. Section 7. Banks and other corporations are required to make sworn returns of property and condition within the first 20 days of January of each year. Sections 27 and 28. The same requirement is exacted of individuals, firms, associations, or corporations whose business is dealing in articles that are exempt and-articles that are not exempt from taxation. Section 28. Mercantile firms are assessed on a fair average of their capital, cash, and credit employed in business, and the insurance carried during the year preceding is to-be considered. Section 7.
The assessor is required, on and after the 1st day of January of each year, to examine the conveyance and mortgage records to ascertain what taxable property in his parish belongs to residents and to absent owners and to unknown owners. Section 10. While ordinary taxpayers are given until May 1st of each year to return their lists-for assessment, they may do so at any time on or after the 1st day of January. Hence we must reaffirm our ruling in Insurance Company v. Board of Assessors, 49 La. Ann. 401, 21 South. 913, to the effect that our revenue laws contemplate an assessment on the basis of the condition of things existing on the 1st day of January of each year.
“The very notion of an assessment "involves the fixing of values at a certain date, since there is no mode of making the valuation vary with the increased or diminished value during the current year, and, if there were, such varying valuations would be destructive of established principles of uniformity.” 27 Am, & Eng. Ency. Law (2d Ed.) p. 662, citing San Francisco, etc., R. Co. v. State Board of Equalization, 60 Cal. 12.
We, therefore, are of opinion that the-buildings and improvements in question constructed on the land -several months after *1065 January 1, 1903, were not subject to assessment for taxation during said year.
Therefore the contention that the taxpayers were estopped to contest the correctness •of the assessment because they failed to return the buildings and improvements for taxation prior to May 1st is without force. As a matter of fact, in three of the cases before the court, the construction of the buildings and improvements did not commence until the latter part of May, 1903.
As the property was not subject to taxation, the legal power of the assessor to list the same after June 1, 1903, need not be ■considered.
It is argued that the president of the Bunkie Brick Works and A. B. West consented to or acquiesced in the assessments made by the assessor on his own motion during the latter part of June, 1903. In the first case, the evidence is conflicting as to any acquiescence at all. In the case of West, he objected to the assessment, but, on the assurance of the assessor that the assessment was legal, acquiesced for the time being. But in both cases the parties a few days later appealed to the board of reviewers for relief.
The equitable doctrine of estoppel does not apply to a case where acquiescence is superinduced by the representations of the •party making the plea.
The jurisdiction of the district court is •questioned on the ground that the amount of taxes involved does not in each case exceed the sum of $50. In the case of the Bunkie Brick Works, the assessment was $2,500, and the rate of taxation 26 mills. The total taxes, therefore, would amount to $65.
In each of the other three cases the total taxes would amount to less than $50.
We think that the district court had jurisdiction, regardless of the amount of taxes in controversy, because civil rights were involved, and, moreover, the defendants in the suits represented the state and the parish. See article 109, Const. 1898. This is the legislative interpretation as shown by section 24 of Act No. 170 of 1898, providing for an appeal to district courts in such eases. Illegal taxation is certainly a deprivation of the citizen’s right of property without due process of law. Article 2, Const. 1898.
Judgment affirmed.