Y. M. C. A. v. CITY OF NEW ORLEANS

(June 24, 1929.    Opinion and Decree.)

W. O. Hart, of New Orleans, attorney for plaintiff, appellee.

Bertrand I. Cahn and Henry B. Curtis, of New Orleans, attorneys for defendant, appellant.

JANVIER, J.  Plaintiff, alleging that, on June 30, 1920, it became the owner of two lots of ground and the improvements thereon, brought suit, seeking the annulment of an adjudication of said property to the city of New Orleans for taxes for the year 1920.

The grounds of annulment urged in the

original petition are:

(a) "That the notice required by law was not given to petitioner preceding said tax sale.

(b) "That said tax sale was not advertised for 30 days as required by the Constitution and laws of the state of Louisiana, but was advertised for but 27 days."

The city of New Orleans denied the material allegations of the petition. Shortly after the case was tried and submitted, the trial judge, in support of a judgment annulling the adjudication, rendered written reasons, the material portion of which reads as follows:

"Defective advertisement is alleged. The law provides that the last publication, if an evening paper, carrying notice of tax sale, must be on the day before the crying and sale of the property. In this case the notice was published on the day of the sale and probably after the sale."

Motion for a new trial was filed, and there appears on the bottom of that motion, in ink, the word "Refused," and the figures, "4/29/25." It is evident, however, that the new trial was in fact granted, because some time later plaintiff filed a supplemental petition, and later still, after appropriate pleadings by defendant, we find another judgment annulling the adjudication. It is from this judgment that the city of New Orleans prosecutes this appeal.

In its supplemental petition plaintiff alleges, as an additional grounds for the nullity of the adjudication:

"That petitioner is a legal, voluntary, eleemosynary institution, charitable in its nature, and so recognized by the courts."

"That under the legislative charter of petitioner, Act No. 89 of 1872, all its property up to $500,000 is exempt from taxation, and the property owned by petitioner does not exceed that amount."

It thus appears that the adjudication of the property is attacked on three grounds, appearing in the two petitions:

(1) Want of notice.

(2) Insufficient advertising.

(3) Exemption from taxation of property owned by petitioner.

The evidence shows that two notices of delinquency were served—one at the domicile of the former owner of the property and another on plaintiff itself through Dr. Brown, whose capacity was admitted by counsel for plaintiff in the following words:

By Mr. Hart: "It is admitted that he is the secretary of the Young Men's Christian Association."

It seems quite apparent, then, that the contention as to want of notice is not well founded.

The advertisement seems to us to have fully complied with legal requirements. It appeared first on August 31, then on September 7, September 14, September 21, and September 28. The sale took place on October 3, 1921, or 32 days after the first advertisement. It will be seen that the advertisements appeared once during each calendar week, or five times in all.

But, argues counsel for plaintiff, the last advertisement, though it appeared in an afternoon paper, did not appear on the day immediately preceding the day of sale, and, therefore, did not comply with the provisions of Act 167 of 1914. Section 1 of that act reads as follows:

"Be it enacted by the General Assembly of the state of Louisiana, that all sales by public auction or otherwise, of movable or immovable property, required by law or order of any court in this state, to be advertised in a newspaper, published either in

the morning or afternoon, provided that when such advertisement is placed in a newspaper published and issued in the afternoon it shall be a legal and valid advertisement if the last advertisement shall appear in the issue of said afternoon newspaper on the day immediately preceding the day of sale."

We are thus asked to hold that, in enacting the statute in question, the legislators intended to require that the last advertisement, if in an afternoon newspaper, must, under penalty of nullity of the sale, appear on the day immediately preceding the sale.

In considering this question it seems to us important to determine what was the reason for the enactment of the statute. Was it to add additional requirements, or was it to remove difficulties? Was it to broaden, or was it to restrict? In view of the fact that, at the time of the passage of this law, our Supreme Court had held (In re Lindner, 113 La. 772, 37 So. 720; Buckingham vs. Negrotto, 116 La. 737, 41 So. 54) that, if the last insertion appeared in an afternoon newspaper, and was not published until after the hour of the sale, this last insertion could not be considered in determining whether there had been a sufficient advertisement, and because of these decisions it was thus thought that advertisements in afternoon newspapers might be illegal, it would seem that the object of the statute was not to add an additional requirement to the effect that the last insertion must appear on any particular day, but was merely to grant permission that it might appear on the day preceding the sale, and to declare that it should not appear after the hour of the sale.

The wording of the statute itself leads us to the conclusion that it was not intended that, if the last insertion appeared on any other day than that immediately preceding the sale, the sale should be null, because,

if that had been the purpose of the legislators, it would have been a very simple matter for them, in unambiguous terms, to have made it mandatory that it should appear on that day, instead of using language which indicates rather permission than command.

If, prior to the enactment of the statute, there had been, in the laws of Louisiana with reference to legal advertisements, any requirement that the last insertion should, under penalty of nullity of the sale, appear on the day of the sale, or on any other particular day, then we would agree with plaintiff in the contention that the purpose of this act was to require that the last insertion appear on the particular day mentioned. But, until that time, there was no requirement that the advertisement appear on the day of the sale or on any other named day. Prior to 1914 all that was required was that the first insertion should appear more than 30 days prior to the sale, and that there should thereafter be an insertion once during each calendar week. Article 1117, R. C. C., and article 670 of the Code of Practice, are based on Act 104 of 1878, which reads as follows:

"Be it enacted by the Senate and House of Representatives of the state of Louisiana in General Assembly convened, that judicial advertisements shall be made by publication in a daily paper on three different days before the expiration of the term fixed by law, if the term be of ten days; and for those advertisements for which the term of thirty days is fixed, it suffices if they are published in a daily paper once a week during that term. * * *"

In re Lindner, 113 La. 772, 37 So. 720, in which case it is true the sale was set aside by reason of deficient advertisement, the court said: .

"There was no advertisement on the 20th, 21st, 22d, 23d, 24th, or 25th of the last week."

The sale took place on the 26th. It seems to us that what the court intended to say was that, if the advertisement had taken place on any one of the days mentioned, it would have been sufficient.

In Buckingham vs. Negrotto, 116 La. 737, 41 So. 54, the court said:

"The advertisement of a tax sale in the last week of the 30 days must be published before the day and hour fixed for the sale."

It will be noted that the court used the words "in the last week or the 30 days."

In In re City of New Orleans, 52 La. Ann. 1078, 27 So. 592, the advertisement complained of appeared once during each calendar week for five weeks. It did not appear on the same day of each week. The Supreme Court held that all that was necessary was that the first advertisement should be at least 30 days prior to the sale, excluding the day of sale and the day of the appearance of the first advertisement, and that it should appear once during each succeeding calendar week. Nowhere do we find any requirement that the last advertisement appear on the day of the sale.

It appears, then, that the purpose of Act 167 of 1914 was to broaden rather than to restrict, and since, at that time, there was no requirement as to the particular day on which the last advertisement should appear, other than it must be during the last week, we think it illogical to hold that the act does restrict, and does fix the particular day on which the last advertisement must appear. It seems to us that the advertisement in this case complied fully with all legal requirements.

Plaintiff's ownership of the property did not commence until June 30, 1920. For the purpose of determining whether or not property is exempt from taxation for any year, its status is to be taken as of January 1st of that year. Gulf Public Service Co. vs. La. Tax Commission et al., 167 La. 757, 120 So. 286; Home Ins. Co. vs. Board of Assessors, 48 La. Ann. 451, 19 So. 280; Southern Ins. Co. vs. Board of Assessors, 49 La. Ann. 401, 21 So. 913; Palfrey vs. Sheriff, 106 La. 699, 31 So. 148; Bunkie Brick Works vs. Police Jury, 113 La. 1062, 37 So. 970; Hammond Lumber Co. vs. Smart, 129 La. 945, 57 So. 277, 38 L. R. A. (N. S.) 856; City of New Iberia vs. Police Jury, 135 La. 775, 66 So. 193; Morgan's La. & Tex. R. R. & S. S. Co. vs. White, 136 La. 1078, 68 So. 130; Jasper & E. Ry. Co. vs. Martin, Tax Collector, et al., 142 La 1047, 78 So. 112.

In the Gulf Public Service Case, supra, which is the latest expression on the subject, the Supreme Court said:

"In jurisdictions where all taxable property is required to be assessed, at a particular date, it has been held that, if, under the local statutes real estate is exempt from taxation on that date, it does not become subject to taxation during the current year, even though transferred to a person in whose hands it is no longer exempt. Clearwater Timber Co. v. Nez Perce County (C. C.) 155 F. 633; Wildberger v. Shaw, 84 Miss. 442, 36 So. 539; Baltimore v. Jenkins, 96 Md. 192, 53 A. 930; Ohio Val. Ry. Co. v. Commonwealth (Ky.) 49 S. W. 548; Electric Co. v. New Orleans, 45 La. Ann. 1475, 14 So. 231; County of Martin v. Drake, 40 Minn. 137, 41 N. W. 942; King v. City of Madison, 17 Ind. 48; Long v. Culp, 14 Kan. 412; Swann & Billups v. State, 77 Ala. 545."

We can see no reason why the converse should not be equally true; that property taxable on January 1st cannot, by reason of a transfer of ownership, thereafter become exempt from the payment of taxes for that year.

We find only one case (Citizens' Bank & Trust Co. vs. Board of Assessors, 129 La. 1091, 57 So. 528, 38 L. R. A. (N. S.) 1157) which, on first reading, would seem to be an exception to this rule, and in the Gulf Public Service Company Case, supra, the Supreme Court of Louisiana has explained and distinguished it in the following manner:

"The only exception to this rule which has been called to attention is the decision in Citizens' Bank & Trust Co. v. Board of Assessors, 129 La. 1091, 57 So. 528, 38 L. R. A. (N. S.' 1157. In that case, it was held that the real estate and improvements of the Citizens' Bank, exempt from taxation on January 1, 1911, became subject to taxation after being acquired by the Citizens' Bank & Trust Company on February 6th of that year.

"This decision was rendered when Act 170 of 1908 was in force, and fixed an assessment period beginning on January 1st and ending on March 1st. The court held the property assessable on the theory that the exemption was lost during the period of listing, since the property during that period had been acquired by an owner in whose hands it was no longer exempt.

"The decision in the Citizens' Bank & Trust Co. case is not pertinent to the present case, since, during the entire period fixed by the Louisiana tax commission for the listing, and for the review by local boards of assessments for 1927, the property involved in this case was a public plant, owned and operated by the city of Crowley, and was exempt from taxation under article 10, sec. 4, of the state Constitution of 1921."

The property was therefore not exempt from taxation for the year 1920. The notice was properly given and the advertisement was sufficient. Plaintiff's case must therefore fall.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and that there now be judgment in favor of defendant, against plaintiff, rejecting plaintiff's demand and dismissing this suit, at the cost of appellant.