696 So.2d 969 (1997)
COMM-CARE CORPORATION
v.
M. Bolivar BISHOP, In his Official Capacity as Sheriff and Tax Collector for The Parish of Beauregard.
COMM-CARE CORPORATION
v.
LOUISIANA TAX COMMISSION, et al.
No. 96-C-1711.
Supreme Court of Louisiana.
July 1, 1997.
David Ramsey Lestage, Hall, Lestage & Landreneau, DeRidder, for Applicant in No. 96-C-1711.
John A. Stassi, II, Christine Wendt Marks, Stassi & Griffith, Metairie; Paul Slocomb West, McGlinchey, Stafford, Lang, Baton Rouge, for Respondent in No. 96-C-1711 and Plaintiff in No. 96-C-2455.
Vyrona M. Wiltz, Krotz Springs, James Thompson Lee, Bunkie, Tony Clell Tillman, Leesville, David Ramsey Lestage, Hall, Lestage & Landreneau, DeRidder; Leu Anne Greco, Greco & Greco, Baton Rouge; Virgil Russell Purvis, Jr., Smith, Taliaferro & Purvis, Jonesville; John Franklin Weeks, II, Ursy & Weeks, Metairie; W. Mark McKee, Blackwell, Chambliss, Henry, Caldwell & Cagle, West Monroe, for Defendant in No. 96-C2455.
JOHNSON, Justice.
These two consolidated cases seek recovery of ad valorem taxes paid under protest. We granted certiorari to determine when a taxpayer's right to sue for a refund of taxes paid under protest prescribes. The First Circuit has held that a taxpayer loses the right to a refund when the taxes are not paid *970 during the year of the assessment, whereas the Third Circuit has held that the taxpayer does not lose the right to seek a refund. For the reasons stated herein, we conclude that the decision rendered by the First Circuit is controlling and reverse the Third Circuit's decision which is to the contrary.

Facts and Procedural History
On March 4, 1994, Plaintiff, Comm-Care Corporation (hereinafter referred to as Comm-Care), purchased a number of nursing homes in Louisiana. In all, ten nursing homes were acquired which were located in nine different parishes throughout the state. The Internal Revenue Service determined that Comm-Care was organized exclusively for charitable, scientific and educational purposes, and therefore declared the corporation tax-exempt from federal income taxes under § 501(C)(3) of the Internal Revenue Code.
In April, 1994, Comm-Care informed the tax collector of its tax-exempt status in each of the parishes where its nursing homes were located, and requested that its properties be placed on the tax-exempt rolls. Each taxing authority for the parishes where plaintiff's facilities were located sent the corporation a notice advising of the total tax assessment due by December 31, 1994. In March of 1995, Comm-Care paid the assessed taxes to each of the taxing authorities for the 1994 tax year, under protest. Suit was filed in April, 1995, seeking the return of the taxes paid with interest for the previous tax year.
Regarding its facility located in Beauregard Parish, Comm-Care named M. Bolivar Bishop as a defendant in his official capacity as Tax Collector and Sheriff. Sheriff Bishop filed several exceptions to the petition, namely, a declinatory exception of lack of jurisdiction of the subject matter, a dilatory exception of prematurity, and a peremptory exception of prescription. In a judgment dated June 22, 1995, the district court denied both the declinatory and dilatory exceptions but sustained Sheriff Bishop's peremptory exception of prescription and dismissed plaintiff's action with prejudice.
Comm-Care appealed to the Third Circuit. On appeal, the court held that there is no statutory requirement that taxes are to be paid timely. The decision rendered by the trial court sustaining the exception of prescription was then reversed. Comm-Care v. Bishop, 673 So.2d 212 (La.App. 3 Cir.1996).
Another of Comm-Care's nursing homes was located in East Baton Rouge Parish. Accordingly, suit was brought there. In response to Comm-Care's petition seeking declaratory relief, several exceptions were filed. In a judgment signed on September 7, 1995, the trial court maintained the defendants' exceptions of prescription and no cause of action. Once again, Comm-Care's demands were dismissed with prejudice. On appeal, the First Circuit affirmed. Comm-Care Corp. v. Louisiana Tax Com'n, 681 So.2d 1001 (La.App. 1 Cir.1996).

Discussion
Our state constitution allows for the collection of ad valorem property taxes. See La. Const. Art. 7 § 18[1]. Additionally, the *971 constitution provides certain exemptions from taxation which includes property owned by a nonprofit corporation. La. Const. Art. 7, § 21(B)(1)(a).[2] However, it is well settled that January 1, of any given year is tax day and on that date, if property is subject to taxation, it remains subject to taxation even though it may go into the hands of an owner who is tax-exempt. The converse to this principle also holds true, i.e., if property is exempt from taxation on January 1, it will remain exempt for the entire year despite a transfer to an entity which is not tax-exempt. New Orleans Bank & Trust Co. v. City of New Orleans, 176 La. 946, 147 So. 42 (1933); Young Men's Christian Ass'n v. City of New Orleans, 11 La.App. 360, 123 So. 363 (1929).
The major issue of concern is whether Comm-Care's right to recover ad valorem taxes assessed for the 1994 tax year prescribed because the taxes were not paid during the 1994 calendar year, but paid under protest the following year. As correctly noted by both appellate courts, the statute which gives rise to a cause of action seeking a refund for payment of ad valorem taxes made under protest is La. R.S. 47:2110.[3] In pertinent part it provides:
A. No court of this state shall issue any process whatsoever to restrain the collection of an ad valorem tax imposed by the state, or any political subdivision thereof, under authority granted to it by the legislature or by the constitution. Any person resisting the payment of any amount of tax found due, or to the enforcement of any provision of the tax laws in relation thereto, shall pay the amount found due to the officer designated by law for the collection of such tax and shall give the officer notice at the time of payment of his intention to file suit for the recovery of such tax. Upon receipt of such notice, the amount so paid shall be segregated and held by the officer for a period of thirty days. If suit is filed within such time for the recovery of the tax, then that portion of the taxes paid that are in dispute shall be segregated and shall be further held pending the outcome of the suit. That portion of the taxes paid by the taxpayer to the officer which is not in dispute shall not be made subject to the protest. If the taxpayer prevails, the officer shall refund the amount to the taxpayer with interest at the rate of two per cent per annum for the period from the date such funds were received by the officer to the date of such refund. If the taxpayer does not prevail, the taxpayer shall be liable for the additional taxes together with interest at the rate of two per cent per annum from the date the notice of the intention to file suit for recovery of taxes was given to the officer until the date such taxes are paid.
B. The right to suit for recovery of a tax paid under protest as provided herein shall afford a legal remedy and right of action in any state or federal court having jurisdiction of the parties and subject matter for a full and complete adjudication of any and all questions arising in the enforcement of such right respecting the legality of any tax accrued or accruing or the method of enforcement thereof. In any *972 such suit, service of process upon the office or agency designated by law for the collection of the tax shall be sufficient service, and he shall be the sole necessary and proper party defendant in any such suit.
...
D. The right of action provided in this section shall be in addition to any rights elsewhere provided in this Subtitle, including R.S. 47:1998, affording taxpayers an opportunity to test the legality or correctness of their assessments or ad valorem taxes paid under protest before the courts of this state.
In its application for relief, Comm-Care asserts three specifications of error. First, they argue that the First Circuit erred in maintaining defendants' exception of prescription because the statute in question (La. R.S. 47:2110) does not require that the taxes be paid timely. Their position is that the statute does not require that the taxes be paid before the thirty-first day of December, and La. R.S. 47:2110 provides a separate remedy not connected with or dependent upon other statutes.
Next, they argue that the First Circuit erred by reading La. R.S. 47:2110 in pari materia with La. R.S. 47:1998 (Judicial review, generally)[4] because these statutes were enacted at different times for different purposes. The statute (La. R.S. 47:2110) sets forth a procedure to seek judicial review of the legality of an assessment, and the legislative intent behind the statute was to provide relief for a taxpayer in addition to other remedies. If the legislature wanted to require timely payment as a prerequisite to judicial review, it could have specifically incorporated wording to that effect. Reading the additional requirement of timeliness into the statute would deny taxpayers the right to seek relief in contravention of the legislative intent. Finally, Comm-Care states that their Due Process rights were violated because the First Circuit erred by denying them any remedy under La. R.S. 47:2110.
Defendants assert that the decision reached by the First Circuit properly dispensed with any concerns raised by Comm-Care. They share the opinion that La. R.S. 47:2110 and 47:2101 A.(1)[5] should be construed in pari materia and that any interpretation other than the one reached by the First Circuit would lead to absurd results.
They strongly argue that the First Circuit was correct in interpreting La. R.S. 47:2110 in conjunction with other sections of Title 47, including La. R.S. 47:2101(A)(1). They further *973 allege that La. R.S. 47:2110 cannot be interpreted in isolation as argued by the plaintiff, and that the First Circuit was correct to hold that the taxpayers were required to pay the taxes when due, no later than December 31. Finally, the defense claims that in order to seek a refund of taxes paid under protest, the taxes must be paid when due and not when they become delinquent.
The facts of this matter are analogous to the facts of Capital Drilling v. Graves, 496 So.2d 487 (La.App. 1 Cir.1986). In Capital Drilling, the defendant, Sheriff Odom Graves was sued by petitioner in his official capacity as ad valorem tax collector in Livingston Parish. Petitioner paid its 1984 taxes under protest the following year on March 5, 1985. Petitioner then filed suit on March 26, 1985, claiming that Sheriff Graves was indebted to it for a refund of ad valorem taxes along with interest, from March 5, 1985 until paid in full.
In support of its decision, the appellate court looked to the rules of statutory construction cited in Bunch v. Town of St. Francisville, 446 So.2d 1357 (La.App. 1 Cir.1984). Bunch involved a dispute between the parties regarding the interpretation of a zoning ordinance. In resolving the dispute, the appellate court noted that when courts interpret a law or ordinance, the court should give the meaning and spirit the lawmaker intended, and it is presumed that the entire wording of a law is to serve some useful purpose. To the contrary, the court will not presume that the lawmaker inserted meaningless or superfluous language in the law rendering it redundant. The case further provides that:
"The lawmaker is presumed to have created laws with deliberation and with full knowledge of all existing laws on the same subject. The meaning and intent of a law is to be determined by consideration of the law in its entirety and all other laws on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the law and with the obvious intent of the lawmaker in enacting it. Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question which harmonizes and reconciles it with other provisions. A construction of a law which creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the law and will carry out the intention of the lawmaker. La. C.C. art. 17; State v. Cazes, 262 La. 202, 263 So.2d 8 (1972); Bowes v. Lake Charles Municipal Fire and Police Civil Service Board, 425 So.2d 787 (La. App. 3rd Cir.1982); Clark v. Board of Commissioners, Port of New Orleans, 422 So.2d 247 (La.App. 4th Cir.1982); Legros v. Conner, 212 So.2d 177 (La.App. 3rd Cir.1968)."[6]
The Capital Drilling court went further to note that La. R.S. 47:2101(A)(1) provides that all taxes shall be collected in the calendar year in which the assessment is made. Taxes are assessed in each year and are due in that calendar year. They are to be paid on or before the thirty-first day of December in each respective year to avoid the consequences cited in Art. VII, Sec. 25 of the Louisiana Constitution. Adhereing to the legal principle of statutory construction, Sheriff Bishop argues that it is legal error to isolate Section 2110 from the remainder of Subtitle III of Title 47, specifically Section 2101.
This court has followed the logic of collectively interpreting statutes that deal with the same subject. In First Nat. Bank v. City of New Orleans, 555 So.2d 1345 (La.1990), this court took the general position that a statutory provision should be construed with the remaining portions of the statute, but more importantly, all statutes on the same subject matter should be read together and interpreted as a whole. See La. C.C. art. 13 and Smith v. Cajun Insulation, Inc., 392 So.2d 398 (La.1980). First Nat. Bank involved the bank share tax cited in La. R.S. 47:1967. There, we noted that the tax was an ad valorem tax just as in the instant matter, and stated "It is located in Subtitle III (Provisions Relating to Ad Valorem Taxes) in Title 47 (Revenue and Taxation) of the Revised Statutes."
*974 Interestingly enough, the statutes in question are likewise located in Subtitle III (Provisions Relating to Ad Valorem Taxes) of Title 47 (Revenue and Taxation). This fact was properly noted in Capital Drilling where the court analyzed the location of 47:2101(A)(1) in our revised statutes, and determined:
"This statute and La. R.S. 47:2110 are located in Part II (Payment and Collection Procedure) of Chapter 4 (Payment and Collection) of Sub-Title III (Provisions relating to Ad Valorem Taxes) of Title 47 (Revenue and Taxation). When La. R.S. 47:2101(A)(1) and 47:2110 are construed in pari materia (La.C.C. art. 17), we conclude that payment under protest (collection of the tax) must be made in the calendar year (not later than December 31) in which the assessment is made."[7]
The facts of these cases charge us with the duty of determining whether the rules of statutory construction dictate a result that follows the reasoning employed in Capital Drilling. Because a statutory provision should be construed along with the remainder of the statute, and all statutes on the same subject matter should be read together and interpreted as a whole, when we examine the opposite results reached by the appellate courts, we find that the conclusion reached by the First Circuit was correct.
The statutes cited therein prove that ad valorem taxes are to be paid in full on or the thirty-first day of December of the tax year. Under La. R.S. 47:2147, the penalty for nonpayment results in a tax sale of the property in question. No evidence exists to allow a taxpayer the right to seek a refund for a payment that was not made during the assessed tax year despite being paid under protest.
When the Third Circuit reversed the trial court's decision to sustain Sheriff Bishop's peremptory exception of prescription, it concluded that there was no express provision in the statute requiring taxes to be paid timely. Based on its interpretation of La. R.S. 47:2110, the Third Circuit opined it was enacted to provide a complete and adequate remedy for prompt recovery of any illegal tax paid by a taxpayer. "The special purpose of the statute is to provide relief to taxpayers attacking the legality of the assessed taxes, not the correctness of such taxes."[8] Additionally, to read the requirement of La. R.S. 47:1998, that a taxpayer cannot contest the correctness of an assessment if not timely paid into La. R.S. 47:2110, defeats its purpose.
Obviously, these two statutes were enacted for different purposes. La. R.S. 47:1998 deals with the correctness of an assessment, whereas, La. R.S. 2110 addresses the legal rights of taxpayer when payment is made under protest. The facts of this case reveal that at the time of purchase, March 1, 1994, the acquired properties were subject to taxation despite the subsequent transfer to an entity with tax-exempt status. To assert any challenge alleging the legality of the tax, those statutes dealing with the same subject should be interpreted together. While it is true that the statute includes no date indicating the deadline for payment of ad valorem taxes found due, La.R.S. 47:2101(A)(1) clearly provides that all taxes assessed in a calendar year shall be paid on or before December 31 of that year. Applying the language of La. R.S. 47:2101(A)(1) along with the jurisprudence interpreting laws in this area, we find that both La. R.S. 47:2110 and 47:2101(A)(1) are located in Louisiana's Revised Statutes, Title 47, Subtitle III (Provisions Relating to Ad Valorem Taxes) under Chapter 4 which is entitled Payment and Collection. While La. R.S. 47:2110 does not state that ad valorem taxes are to be paid on a given date, it is without question that La. R.S. 47:2101(A)(1) provides that taxes are to be paid on or before December 31 of the tax year. Accordingly, when Comm-Care paid its taxes in March of 1995, the taxes were delinquent. Applying the above analogy along with the rule that all statutes on the same subject matter should be read together and interpreted as a whole, we find that the decision rendered by the First Circuit properly dispensed with the issue of prescription.
*975 Next, we address Comm-Care's argument that their Due Process rights were violated when they were denied relief as per La. R.S. 47:2110. Our decision rendered in Church Point Wholesale Beverage v. Tarver, 614 So.2d 697 (La.1993) adequately resolves this argument. Relying on the decision rendered in McKesson v. Division of Alcoholic Beverages & Tobacco, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), we found that a state has two options to comply with Due Process. First, a state can provide the avenue of pre-deprivation by allowing the taxpayers the ability to meaningfully challenge the tax before paying it. Secondly, a state can chose the option of post-deprivation by affording its taxpayers an opportunity to challenge the validity of the tax and a certain remedy with the following procedural requirements: (1) only taxpayers paying "under protest" would be entitled to relief; and,(2) the actions could be subject to short statute of limitations.[9]
The facts of this case reveal that Comm-Care paid its taxes, therefore we are only concerned with post-deprivation relief. In no uncertain terms, the statute provides that a person resisting payment of an amount of ad valorem tax found due shall pay the amount to the proper officer, at which time he shall give to that officer notice of his intention to file suit to recover the tax. Upon receipt of the taxpayer's notice of suit, the officer will segregate the amount and hold it for thirty days. If suit is filed, then that portion of the tax which is being disputed shall be segregated and held pending the outcome of the litigation. In addition to the amount of tax in dispute, the statute further provides the taxpayer interest should he prevail. After reviewing La. R.S. 47:2110, we find that there were no Due Process violations. The only reason Comm-Care was refused a refund was because the corporation voluntarily chose to pay its taxes under protest beyond the time prescribed by R.S. 47:2101(A)(1).
Additional exceptions were filed in this matter. However, because we conclude that Comm-Care's right to seek a refund prescribed and is dispositive of the case, we pretermit a discussion of other exceptions filed.

Decree
For the reasons stated herein, the decision rendered by the First Circuit affirming the trial court's sustaining of the peremptory exception of prescription is affirmed. The decision of the Third Circuit is reversed and the trial court's granting of defendant's exception of prescription is reinstated.
Affirmed in part; Reversed in part; Rendered.
MARCUS, J., not on panel. Rule IV, Part 2, § 3.
LEMMON, J., dissents and assigns reasons.
VICTORY and KNOLL, JJ., dissent for the reasons assigned by LEMMON J.
LEMMON, Justice, dissenting.
The only time limitation contained in La. Rev.Stat. 47:2110, the statute governing payment under protest, is the requirement that suit be filed within thirty days of the payment under protest. No other statute has been pointed out to us that provides any other period of limitation on the payment under protest procedure.
La.Rev.Stat. 47:2101(A)(1), relied on by the majority, provides only that taxes are due by December 31 in order to avoid enforcement proceedings. There is no requirement of payment by December 31 in order to avoid loss of the right to pay under protest. It would have made perfect sense for the Legislature to provide such a limitation, but the Legislature in fact did not do so.
Since ambiguous statutes should be construed in favor of the taxpayer, I dissent from the broad construction that imposes a limitation on the taxpayer which the Legislature did not provide.
NOTES
[1] § 18. Ad Valorem Taxes

Section 18. (A) Assessments. Property subject to ad valorem taxation shall be listed on the assessment rolls at its assessed valuation, which, except as provided in Paragraph (C), shall be a percentage of its fair market value. The percentage of fair market value shall be uniform throughout the state upon the same class of property.
(B) Classification. The classifications of property subject to ad valorem taxation and the percentage of fair market value applicable to each classification for the purpose of determining assessed valuation are as follows:

Classification Percentages
1. Land 10%
2. Improvements for residential
purposes 10%
3. Electric cooperative properties,
excluding land 15%
4. Public services properties,
excluding land 25%
5. Other property 15%

The legislature may enact laws defining electric cooperative properties and public services properties.
(C) Use Value. Bona fide agricultural, horticultural, marsh, and timber lands, as defined by general law, shall be assessed for tax purposes at ten percent of use rather than fair market value. The legislature may provide by law similarly for buildings of historic architectural importance.
(D) Valuation. Each assessor shall determine the fair market value of all property subject to taxation within his respective parish or district except public service properties, which shall be valued at fair market by the Louisiana Tax Commission or its successor. Each assessor shall determine the use of the property which is to be so assessed under the provisions of Paragraph (C). Fair market value and use value of property shall be determined in accordance with the criteria which shall be established by law and which shall apply uniformly throughout the state.
(E) Review. The correctness of assessments by the assessor shall be subject to review first by the parish governing authority, then by the Louisiana Tax Commission or its successor, and finally by the courts, all in accordance with procedures established by law.
(F) Reappraisal. All property subject to taxation shall be reappraised and valued in accordance with this Section, at intervals of not more than four years.
[2] Property owned by a nonprofit corporation or association organized and operated exclusively for religious, dedicated places of burial, charitable, health, welfare, fraternal, or educational purposes, no part of the net earnings of which inure to the benefit of any private shareholder or member thereof and which is declared to be tax exempt from federal or state income tax; ...
[3] This statute was amended by Acts 1995 No. 53 § 1, and No. 272 § 1 which became effective on July 1, 1995. However, there were no substantive changes made therein. As properly noted below, the text of the statute cited herein is the version that was in effect at the time payment was made.
[4] For purposes of this litigation, the statute provides:

A. (1) Any taxpayer or bona fide representative of an affected tax-recipient body in the state dissatisfied with the action of the tax commission under the provisions of R.S. 47:1989, shall have the right to institute suit within thirty days of the decision of the tax commission in either the district court for the parish where the tax commission is domiciled or the district court of the parish where the property is located contesting to the correctness of the assessment ...
(2) Any taxpayer who has filed suit under this provision and whose taxes have become due shall pay such taxes under protest and shall cause to issue notice to the officer designated by law for the collection of such tax under the provisions of R.S. 47:2110(E), and shall cause service of process to be made on the Louisiana Tax Commission as the officer designated by law to assess the property as provided for in R.S. 47:2110(B). However, the portion of taxes that is not in dispute shall be paid without being made subject to the protest ...
F. If the assessed valuation finally determined under this Section is greater than the taxpayer's own assessed valuation, the court shall enter judgment against the taxpayer for the additional taxes due together with the interest at the actual rate earned on the money paid under protest in the escrow account during the period from the date of notice intention to file suit for the recovery of taxes pursuant to R.S. 47:2110(E) until paid. If the taxpayer prevails in his suit to recover taxes paid under protest, the appropriate amount of taxes shall be refunded to the taxpayer together with interest at the rate set forth above during the period from the date of payment until the date of such refund.
[5] § 2101 entitled "Time for payment; notice when due" at A. (1) provides in pertinent part:

All taxes shall be collected in the calendar year in which the assessment thereof is made, and they shall be designated as the "taxes for the year____", accordingly as they are collectible, and as the taxes assessed in each year shall be due in that calendar year as soon as the tax roll is filed in the office of the recorder of mortgages, except ..., and they shall be paid on or before the thirty-first day of December in each respective year in order to avoid notice, advertisement, and sale required by Article VII, Section 25 of the Louisiana Constitution ...
[6] Id. at 1360.
[7] Capital Drilling at 491.
[8] Comm-Care v. Bishop, at 214.
[9] Church Point Wholesale Beverage, at 703.