O’NIELL, C. J.
 

 On the 20th of April, 1917, Andreas Seubert sold to G. L. Carriere three tracts of land in Richland parish, reserving the mineral oil and gas rights on the lands, described as follows: (1) E% of Eya, SW% of SEy,, N% of NW% and SW% of section 1; (2) sy2 of NE% and W% of SE% of section 2, and NE% of section 11, all in township 16 north, range 5 east; and (3) NW% of NE% and Sy2 of NE% of section 34, and NWy, of section 35, in township 17 north, range 5 east. On the 19th of January, 1918, Carriere sold to H. W. Moore, without reserving or mentioning the mineral rights, the tract containing 80 acres, forming the eastern part of the tract No. 3, and described as E% of NW% of section,35, in township 17 north, range 5 east. Although the deed from Seubert to Carriere, with the reservation of the mineral rights in favor of ■Seubert, was recorded in the conveyance records on the 21st of April, 1917, Moore was not in fact informed of Seubert’s reservation of the mineral rights, and therefore bought the 80 acres of land in good faith, believing that he was acquiring unlimited ownership of it; and he immediately went into possession of the 80 acres of land, by fencing it and cultivating it as a farm, and had been in actual possession continuously for more than •twelve years when this suit was brought against him, to enjoin -him from interfering with the plaintiffs, the Palmer Corporation of Louisiana and the Gulf Refining Company of Louisiana, in their attempt to enter upon the 80 acres of land and exercise the mineral rights, which they had acquired by virtue of a lease,'and through mesne conveyances from Andreas Seubert. No previous attempt had been made to drill for oil or gas or other minerals on the 80 acres of land, or on the tract No. 3, which it formed part of, during the period exceeding twelve years during which the defendant, Moore, had been continuously in undisturbed possession of the 80 acres of land. He, therefore, pleaded in bar of the plaintiffs’ suit the prescription of ten years' — both the prescription liberandi causa, under articles 789, 3529', 3544 and 3546' of the Civil Code, and the prescription acquirendi causa, under article 3478 of the Civil Code, as amended by Act 64 of 1924, p. 91. The district judge sustained the pleas of prescription, and dismissed the suit. The plaintiffs have appealed from the decision.
 

 The appellants contend that the prescription of ten years acquirendi causa, under article 3478 of the Civil Code, as amended by Act 64 of 1924, is not applicable to a servitude,
 
 *777
 
 or to any kind of real right, such as the right to drill for mineral oil and gas; and they contend that the prescription of ten years, liberandi causa was suspended by the minority of one of the co-owners of the mineral rights, from whom the Gulf Refining Company obtained the oil and gas lease, before the ten years had expired. The facts in that respect are not disputed. Andreas Seubert sold to John Seubert, on the 18th of March, 1918, the mineral oil and gas rights which he had reserved from the sale of the land to Carriere on the 20th of April, 1917. John Seubert sold one-third interest in the mineral oil and gas rights to Louis Scharbau, on the 16th of February, 1920. John Seubert, then owning two-thirds interest in the oil and gas rights, died on the 16th of Márch, 1923, leaving a widow in community and ten sons and daughters as his heirs at law. All of the sons and daughters of the deceased, John Seubert, were of age except one son, Alois Seubert, who was born on the 31st of October, 1906, and who, therefore, did not arrive at the age of majority until three years, seven months and fifteen days after his father’s death. It appears that the wife of Louis Scharbau also died, leaving two sons, who inherited her half of the one-third interest in the oil and gas rights, which her husband had bought from John Seubert on the 16th of February, 1920. The oil and gas rights which Andreas Seubert had reserved were then owned jointly by John Seubert’s widow, owning one-third interest, her ten sons and daughters, each owning one-thirtieth interest, Louis Scharbau, owning one-sixth interest, and his two sons, each owning one-twelfth interest. They, the widow and heirs of John Seubert, deceased, and Louis Scharbau and the heirs of his deceased wife, being all of the co-owners of the mineral rights in the three tracts of land which Andreas Seubert had sold to Carriere on the 21st of April, 1917, granted an oil and gas lease to the Gulf Refining Company on the three tracts of land on the 22d of November, 1926; which was nine years, seven months and a day subsequent to the reservation of the mineral rights. On the 30th of November, 1926, the Gulf Refining Company assigned the lease to S. D. Hunter, only in so far as it affected the natural gas and the right to produce and remove the same; and on the 28th of February, 1927, Hunter reassigned the lease to tha Gulf Refining Company, in so far as it affected the gas rights in and under the tract No. 3, including the 80 acres which Carriere had sold to the defendant, Moore. On the 29th of December, 1927, which was more than ten years after Andreas Seubert had sold the land' to Carriere 'and reserved the mineral oil and gas rights, the Gulf Refining Company assigned its lease to the Palmer Corporation, in so far only as the lease affected the gas rights in the three tracts of land, including the 80 acres which Carriere had sold to the defendant, Moore. The Gulf Refining Company retained the' lease in so far as it affected the oil rights in the three tracts of land, subject, of course, to the laws of prescription. The Gulf Refining Company and the Palmer Corporation drilled wells, which produced gas, on the tract No. 1 and on tract No. 2, before the 6th of April, 1927, that is to say, within ten years after Andreas Seubert had sold the lands to Carriere and reserved the oil and gas rights; but no attempt was made by either corporation to drill for oil or gas on tract No. 3 — which included the defendant’s 80 acres, and which was three-quarters of a mile from the nearer of the two other tracts — until the 30th of August, 1930, when the engineers of the Palmer Corporation attempted to go upon the defendant’s tract of 80 acres to drill a gas well, and were prevent
 
 *779
 
 ed by the defendant. He had been in undisturbed possession as owner of the 80. acres of land, continuously, for a period exceeding twelve years and seven months. His resistance of the plaintiffs’ attempt to drill on his land is what provoked this injunction suit.
 

 The mineral oil and gas rights which Andreas Seubert reserved when he sold the land to Carriere were, of course, lost as to him and his assigns by the prescription of ten years, liberandi causa, for nonuser-, under articles 789, 3529, 3544 and 3546 of the Civil Code, unless the prescription was suspended by the minority of Alois Seubert while he owned an interest in the oil and gas rights. A sale or reservation of the mineral oil or gas in a tract of land constitutes a sale or reservation merely of a real right, or personal servitude, to go upon the land and explore for oil or gas and to possess and own such oil or gas as may be produced; and such a real right or servitude is lost by the prescription of ten years, liberandi causa, if the owner of the right, being not the owner of the land itself, fails to exercise it for a period of ten years. Frost-Johnson Lumber Co. v. Nabors Oil & Gas Co., 149 La. 100, 88 So. 723; Frost-Johnson Lumber Co. v. Salling’s Heirs, 150 La. 756, 91 So. 207; Huie Hodge Lumber Co. v. Railroad Lands Co., 151 La. 197, 91 So. 676; Nabors Oil & Gas Co. v. Louisiana Oil Refining Corporation, 151 La. 361, 91 So. 765; Shaw v. Watson, 151 La. 893, 92 So. 375; Sellington v. Producers’ Oil Co., 152 La. 81, 92 So. 742; Lieber v. Ouachita Natural Gas & Oil Co., 153 La. 160, 95 So. 538; Wetherbee v. Railroad Lands Co., 153 La. 1059, 97 So. 40; Wemple v. Nabors Oil & Gas Co., 154 La. 483, 97 So. 666; Lee v. Giauque, 154 La. 491, 97 So. 669; Exchange National Bank of Shreveport v. Head, 155 La. 309, 99 So. 272; Louisiana Gas & Fuel Co. v. White Bros., 157; La. 728, 103 So. 23; Bodcaw Lumber Co. v. Cox, 159 La. 810, 106 So. 313; Liles v. Texas Co., 166 La. 293, 117 So. 229; Keebler v. Seubert, 167 La. 901, 120 So. 591; Bodcaw Lumber Co. v. Magnolia Petroleum Co., 167 La. 847, 120 So. 389; Lewis v. Bodcaw Lumber Co., 167 La. 1067, 120 So. 859; Brown v. Spilman, 155 U. S. 665, 15 S. Ct. 245, 39 L. Ed. 304; Ohio Oil Co. v. Indiana, 177 U. S. 190, 20 S. Ct. 576, 44 L. Ed. 729; Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 S. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160; Walls v. Midland Carbon Co., 254 U. S. 300, 41 S. Ct. 118, 65 L. Ed. 276.
 

 It is well settled also that one who holds an oil or gas lease on two or more separate tracts of land cannot by drilling on one tract interrupt the running of prescription against his rights on another tract, even though it be included in the same contract.’ Lee v. Giauque, 154 La. 491, 97 So. 669; Keebler v. Seubert, 167 La. 901, 120 So. 591. This latter decision has reference to the same three tracts of land that were sold by Andreas Seubert to G. L. Carriere, and' to the contract of lease of the Gulf Refining Company, in contest in this suit.
 

 In support of the argument for the appellants that the minority of Alois Seubert suspended the prescription liberandi causa, not only as to the minor’s interest in the mineral rights, but also as to the interest of the major co-owners, counsel for appellants refer to articles 801, 802 and 803 of the Civil Code, viz.:
 

 “Art. 801. If the estate in whose favor the servitude is established belongs to several and has never been divided, the enjoyment of one bars prescription with respect to all.
 

 “Art. 802. If among the co-proprietors there be one against whom prescription cannot
 
 *781
 
 run, as for instance a minor, lie shall preserve the right of all the others.
 

 “Art. 803. When the estate to which the servitude is due. ceases to be undivided, by means of a partition, each of those who were the co-proprietors, only preserves the servitude by the use he makes of it, and the others lose it by non-usage during the time required for prescription. .
 

 “If a servitude be due to several persons, but on different days, as the right of drawing water, he who does not exercise his right, loses it, and the estate subject to the servitude becomes free from it, as respects him.”
 

 The language of the articles quoted shows plainly that articles 801 and 802 and the first paragraph of article 803 are applicable only to real or predial servitudes, and not to a servitude in favor of a person. The second paragraph of article 803 seems applicable to a personal servitude; if the servitude he in favor of two or more persons and the right of each one of them is so defined that it may he exercised without interference with the right of another. Real'or predial servitudes are defined in article 646 of the Code, thus: “Real servitudes, which are also called predial or landed servitudes, are those which the owner of an estate enjoys on a neighboring estate for 'the benefit of his own estate.” Article 801 says: “If the estate in whose favor the servitude is established,” etc., which cannot refer to anything but a predial servitude. And article 802 says: “If among the co-proprietors,” etc., which means the coproprietors of “the estate in whose favor the servitude is established.” And the first paragraph of article 803 says: “When the estate to which the servitude is due,” etc., which means only a predial servitude. Ever since the ruling in Frost-Johnson Lumber Co. v. Salling’s Heirs, 150 La. 756, 91 So. 207, we have adhered to the view that the right of a person to the mineral oil and gas in the land of another is a personal servitude, in the nature of a limited usufruct. The provisions of the Civil Code which'provide for the establishment of such a personal servitude were cited and discussed at length in the Frost-Johnson Case, 150 La. pages 777, 778, 91 So. pages 214, 215. There is nothing in articles 801, 802 or 803, cited by counsel for appellants, or elsewhere in the Civil Code, as far as we know, to support the proposition that the minority of one of several co-owners of the oil and gas rights in the land of another person has the effect of suspending the prescription of ten years, for nonuser, as to all of the co-owners of the oil and gas rights. According to the record, it seems that Alois Seubert, who was a minor when his father died, inherited only a thirtieth interest in the oil and gas rights which his father owned. It is sufficient, however, to say that the minor, Alois Seubert, owned jointly with others, and hence owned only a fractional part of the oil and gas rights. Conceding, for the sake of argument, that the prescription of ten years, liberandi causa, for nonuser, was suspended during the minority of Alois Seubert as to his interest in the oil and gas rights, we are not so sure that there was a suspension of prescription as to the interest of the major co-owners of the oil and gas rights. And it would seem anomalous to hold that the plaintiffs, Palmer Corporation and Gulf Refining Company, have a valid oil and gas lease, acquired from only one of several co-owners of the oil and gas rights. Such a ’ lease was deemed unavailing without the consent of all of the co-owners of the oil and gas rights, in Wiley v. Davis, 164 La. 1090, 115 So. 280.
 

 We prefer, however, to rest our decision of this case upon the proposition that the
 
 *783
 
 defendant’s title, in tlie sense of full and absolute ownership of the property which he bought from Oarriere,' was perfected by the. prescription of ten years under article 3478 of the Civil Code. As amended by Act No. 64 of 1924, p. 91, the article provides “that this prescription once it has begun to run against a party shall not be interrupted in favor of any minor heirs of said party.” Accordingly, this prescription, having begun to run against John Seubert, was not interrupted in favor of the minor heir of John Seubert.
 

 Counsel for appellants argue that Act 64 of 1924 cannot have reference to the prescription liberandi causa, by which servitudes or real rights are extinguished for nonuser for ten years, because the statute is an amendment and re-enactment of an article which refers only to the prescription of ten years acquired causa. The question, however, is not whether the amending statute, by which the prescription of ten years acquirendi causa was made effective against minors, has reference also to the prescription liberandi causa. The amendment, of course, has reference only to the prescription acquirendi causa, provided for in article 3478 of the Code, which article alone was amended by the statute. But the question is whether a personal servitude on the land of another could be lost by the prescription of ten years acquirendi causa, under article 3478 of the Code before it was amended, by the owner of the land acquiring a perfect title, and thereby extinguishing the personal servitude, by confusion, so to speak. Considering that a possessor in good faith, under a title apparently valid but emanating from one who had no title whatever, may acquire by the prescription of ten years acquirendi causa the title of the one who really owned the property, it would seem anomalous to hold that a possessor in good faith, under a title apparently valid and emanating from the owner of the land, subject to a servitude in favor of another person, cannot acquire by the prescription of ten years acquirendi causa the absolute ownership of the property, and thus extinguish the servitude by reason of every element of ownership being vested in one person. If Garriere had not sold the land, or if he, in selling it to Moore, had excepted the oil and gas rights which had been reserved by Andreas Seubert, the prescription of ten years liberandi causa would not be applicable to the case. But, as Carriere sold the land without any reservation or 'mention of the oil or gas rights, to a purchaser in good faith, the prescription of ten years acquirendi causa is as appropriate a bar to the claim of Andreas Seubert, or of his assigns^ as if he had reserved a part of the land itself. In fact, when a landowner sells only the mineral rights in his land, or sells the land and reserves the mineral rights, the transaction constitutes a dismemberment of the ownership, and is a sale or reservation, as the case may be, of one of the elements of ownership. In “Wiley v. Davis, 164 La. 1092, 115 So. 280, 281, it was said, with regard to an oil -and gas lease: “The granting of a mineral lease on property * * * constitutes a dismemberment of said property amounting to a partial alienation thereof (Hanby v. Texas Co., 140 La. 189, 194, 72 So. 933).” Inasmuch as a perfect title, or absolute ownership, can be acquired by the prescription acquirendi causa against a previous alienation of the property, it must follow that a perfect title, or absolute ownership, can be acquired by the prescription acquirendi causa against a previous partial alienation of the property.
 

 Counsel for appellants cite the case of Gray v. Edgar Lumber Co., 138 La. 906, 70 So. 877,
 
 *785
 
 878, where the owner of a tract of land sold the timber on it to the lumber company and afterwards sold the land to Gray, without excepting or mentioning the timber; and the court said that, if the intention was to include the timber in the sale to Gray, “the transfer was null, as a sale of property belonging to another.” But it is well settled that a sale of the property of another may be the basis for the prescription of ten years acquirendi causa. It was said also in the case cited: “Plaintiff was bound to take notice of the duly recorded prior sale of the timber to the defendant.” But the fact that a previous sale is duly recorded does not prevent a subsequent sale, by the previous owner, from being a basis for the prescription of ten years acquirendi causa. See Clayton v. Rickerson, 160 La. 771, 107 So. 569, overruling Lewis v. King, 157 La. 718, 103 So. 19.
 

 The judgment is affirmed.