No. 3716

Second Circuit

(Second Division)

MAGNOLIA PETROLEUM CO. v.
SANDLIN ET AL.

(November 18, 1931. Opinion and Decree.)
(December 9, 1931. Rehearing Refused.)

Pugh, Grimmett & Boatner, of Shreveport, attorneys for plaintiff, appellant.

J. F. McInnis and Coleman Lindsey, of Minden, attorneys for defendants, appellees.

STEPHENS, J. The plaintiff sues for a reduction of its assessment for the year 1928 in Webster parish on gas pipe line designated by it as "a gathering line," and on oil in storage.

For the year 1928 plaintiff made the following rendition for assessment purposes of its property in Webster parish:

Oil in storage—129,535 bbls. @ 85c $110,105
5½ miles six-inch gathering line____ 19,140

The assessor of Webster parish assessed plaintiff on its property in Webster parish as follows:

Oil in storage_____$132,520
6.81 miles pipe line @ $4,765 per
   mile _____ ____ _____ 32,586

The assessment of oil in storage was based on three inventories furnished by the plaintiff to the assessor as follows:

January 1, 1927_____ _____ 173,182 bbls.
July 1, 1927_____156,287 bbls.
January 1, 1928_____156,287 bbls.

From these figures a deduction of 20 per cent was made for b. s. and water, making the net inventories as follows:

January 1, 1927_____138,546 bbls.
July 1, 1927_____125,028 bbls.
January 1, 1928_____125,028 bbls.

It is admitted that the price per barrel of oil was as follows on the dates mentioned:

January 1, 1927_____:_____$1.20
July 1, 1927_____ 1.00
January 1, 1928_____ .85

The assessor arrived at the oil in storage in the following manner:

Jan. 1, 1927—138,546 bbls.· @ $1.20 $166,255
July 1, 1927—125,028 bbls. @ 1.00 125,028
Jan. 1, 1928—125,028 bbls. @ .85 106,273

The assessor then took the average, which is $132,520 as the value of the oil for assessment purposes.

Plaintiff rendered to the assessor 5½ miles of pipe line, whereas he was assessed with 6.81 miles. It is admitted that 5½ miles is correct. The cost per mile of the line is admitted to be $6,960. Plaintiff classes it as "a gathering line" and depreciates it 10 per cent per year for five years, valuing it at $3,480 per mile, or a total of $19,140. The assessor classes it as "a main line" and depreciates it at 6¼ per cent per year for five years, and assessed it at $4,765 per mile.

The plaintiff prays that its assessment be reduced on this property to the amount as rendered. The district court gave judgment in favor of plaintiff reducing the assessment $6,242.15 for the 1 31/100 miles of pipe line, admitted to have been assessed in error, but otherwise rejecting its demands. The plaintiff appealed from said judgment.

There was offered and filed in evidence by the defendant a booklet entitled "Instructions to Assessors" which was issued by the Louisiana Tax Commission. We find the following therein with reference to six-inch pipe lines:

"The 1928 values on pipe lines are as follows: 6″ Pipe Line—6¼% per annum depreciation from cost."

With reference to oil and gas gathering lines, we quote from the instructions:

"The above lines are distinguished from standard pipe lines, for the reason. that gathering lines are constantly being moved and shifted about in conveying oil from the field of storage tanks, refineries, etc. Gathering lines cannot have the same value as a standard pipe line, and the attention of the assessors is directed to this fact because a standard pipe line valuation represents cost of digging the trench along the right of way, labor of laying and connecting the line and the backfilling of trench transportation of oil. No values for gathering lines have been fixed by this Commission, and assessors are directed to list same at actual value. We suggest to determine actual value that a depreciation rate not greater than 10% per annum be allowed from cost of new pipe."

The evidence shows that the line, the value of which is here in dispute, was a well laid one, and that it was prepared, painted and buried in much the same manner as a standard pipe line. The assessor therefore classified the line as a standard pipe line, and depreciated its admitted cost of $6,960 per mile at 6¼ per cent per year for five years, and accordingly valued it for assessment purposes at $4,765 per mile.

The defendants, it appears, contend that the cost value per mile being admitted, and the line having been properly classified as a main line, and the standard rate of depreciation having been correctly applied, the value for assessment purposes is established.

The application of general rules by which values are determined for purposes of uniformity in taxation are not entitled to great weight in determining the value of a specific object. While a fixed depre-

ciation test tends to uniformity in establishing values, it must yield to evidence of actual depreciation of a specific object the value of which is in dispute in a suit to correct an assessment. Deterioration is not uniform or constant in objects of the same kind or character. The life of a pipe line varies in proportion to the amount of destructive chemicals in the earth through which it passes.

The assessment resulting from the application of the Louisiana Tax Commission rules is only prima facie correct. The burden is on plaintiff in this action to establish the actual value of the pipe line. This burden the plaintiff has clearly sustained. No testimony was adduced as to the value except by plaintiff, and that testimony is uniformly to the effect that the pipe line was worth less than $3,000 per mile.

The question as to the correct value of the oil in storage for assessment purposes may be thus stated: Should the Magnolia Petroleum Company have calculated the value of its oil in storage at 85 cents per barrel, which it was worth on January 1, 1928, or at the average price of the oil during the year previous to assessment; calculated on the price as of January 1, 1927, July 1, 1927, and January 1, 1928?

It must be conceded that ordinarily property should be assessed at its actual cash value, and according to the situation existing on January 1st of the taxable year. Act 170 of 1898, sec. 7 and sec. 20; Southern Insurance Co. v. Board of Assessors, 49 La. Ann. 401, 21 So. 913; Palfrey v. Connely, 106 La. 699, 31 So. 148; Louisiana Oil Refining Corporation v. Louisiana Tax Commission, 167 La. 605, 120 So. 23.

The defendants contend that section 7 of Act 170 of 1898 authorizes an assignment of an average value for the previous year.

The pertinent part of the section reads as follows:

"That in assessing mercantile firms the true intent and purpose of this act shall be held to mean, the placing of such value upon the stock in trade * * * as will represent in their aggregate a fair average on the capital, both cash and credit, employed in the business of the party or parties to be assessed."

Section 1, article 10 of the Constitution of 1921, provides that no property shall be assessed for more than its actual cash value, and all taxpayers shall have the right of testing the correctness of their assessments before the courts at the domicile of the assessing authority.

Section 7 of Act 170 of 1898, further provides that it shall be the duty of tax assessors to place upon the assessment list all property subject to taxation, including merchandise or stock in trade on hand at the date of listing.

This court, citing as authority, Peden Iron & Steel Co. v. Louisiana Tax Commission, 163 La. 103, 111 So. 614, 615; Swift & Co. v. Board of Assessors, 115 La. 322, 38 So. 1006; Cudahy Packing Co. v. Board of Assessors, 115 La. 326, 38 So. 1008, used the following language in the case of Baker-Lawhorn & Ford, Inc., v. Louisiana Tax Commission, 15 La. App. 189, 130 So. 642, 643:

"Although there is not any decision cited in which it has been expressly held that the mean amount of the inventories taken in the preceding year must be taken as showing the inventory value of the average stock of merchandise carried during the year the assessment is made, there are several cases where the assessment has been based upon the mean amount of such inventories, * * * but we are of the opinion that the mean amount of the inventories is merely evidence of the inventory value of the average amount of merchandise carried, and that, where the evidence shows such mean amount is more or less

than the average amount of merchandise carried, neither the taxing authorities nor the tax debtor is bound thereby (Peden Iron & Steel Co. v. Louisiana Tax Commission, 163 La. 103, 111 So. 614)."

In the case of Peden Iron & Steel Co. v. Louisiana Tax Commission, supra, the Supreme Court, speaking through Mr. Justice Thompson, reviewed the decisions above referred to, and established a method to be observed by assessors which is fair both to the taxpayer and the state, and which reconciles the provisions of the statute with the cash value clause of the Constitution. The rule is stated as follows:

"(1) We take the rule to be that, where it is not practicable to arrive at the amount of merchandise or stock in trade on hand at the time of listing the same for taxing purposes, then the assessing authorities are authorized to take as a basis for such purpose the average amount of stock on hand for the preceding year, and this method is fair both to the taxpayer and to the state.

"(2) Where, however, the amount of stock on hand at the time of listing can be reasonably ascertained, then that amount should be accepted as the basis for the assessment. This method would be strictly in keeping with the cash value clause of the Constitution and the requirement of the statute that the valuation should be of the stock on hand at the date of listing."

This rule, expressed as it is in clear unmistakable language, solves at once in a simple, practical way a difficult assessor's problem which is constantly arising, and the question in this case. The amount of stock on hand in the instant case at the date of listing could not only be reasonably ascertained, but was definitely determined to be 125,028 barrels, and the price on the same date being 85 cents per barrel, the proper value for assessment purposes of oil in storage was $106,273.80.

As the values as rendered by the plaintiff exceed the correct values for assessment purposes as determined in this case, the assessment should be reduced in accordance with the rendition as prayed for.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff and against the defendant, decreeing a reduction of the assessment of plaintiff's property in Webster parish, Louisiana, to the amount as rendered to the assessor by plaintiff, which is as follows: Oil in storage, $110,105; six-inch gathering line, $19,140.

It is further ordered that the defendants pay all costs of this proceeding.

DREW, J., recused.