## BARTHOLD et al. v. DOVER et al.*
### No. 4777.

Court of Appeal of Louisiana. Second Circuit.
March 2, 1934.

Fraser & Carroll, of Many, for appellants.

Cook & Cook, of Shreveport, for appellees.

MILLS, Judge.

W. H. Barthold and Joseph E. Bauer represent that they are the owners of the mineral rights to the west half of the northwest quarter of the northeast quarter, section 35, township 18 north, range 12 west, Sabine parish, La., having acquired same by mesne conveyance from the Pecan Belt Land Company, which, by deed dated December 11, 1929, recorded January 27, 1930, sold said rights, separately from the land, to Silas M. Newton, author in title of plaintiffs. The same rights are claimed by Joe Dover and Sarah A. Vandegaer by reason of a tax sale of the whole property dated June 14, 1930, for the taxes of 1929, in the name of the Pecan Belt Land Company, as shown by tax deed recorded July 1, 1930. Plaintiffs contend that the mineral rights, being separately owned by them under deed executed and recorded prior to the tax sale, were not included in or affected by it.

In the alternative, they contend that the tax sale is null and void because (a) no notice of delinquency or intention to sell their rights was given to them prior to said sale; (b) the 20 acres described above were sold at tax sale in globo with other lands assessed in different wards, all in the name of Pecan Belt Land Company, but each assessment varying as to millage and rate; that the effect of said sale would be to burden the land in controversy with taxes due by other lands.

They pray that they be recognized as owners of said mineral rights and granted the possession thereof, and, in the alternative, that the tax sale be annulled in so far as it affects their rights.

Defendants answer that the tax lien for the taxes of 1929 attached as of date January 1st of that year, prior to the severance of the mineral rights, and that the tax sale carried with it the complete ownership of the property, including said rights. They pray for a confirmation of their ownership of the complete title to the land, and in the alternative, if said tax sale is avoided and set aside, that they have judgment against plaintiffs in the sum of $886.70 and interest, which sum includes the amount paid by them at said tax sale on all the property sold, and $5.75 taxes paid on the 20 acres for 1930.

The case was tried upon an agreed statement showing the facts to be as alleged in the petition and answer, leaving only questions of law to be determined. There was a joint admission that the rights in dispute are worth $1,000.

In the lower court there was judgment rejecting the demands of plaintiffs and recognizing the complete ownership of defendants. From this judgment plaintiffs have appealed, and defendants have answered, urging their alternative demand for the return of taxes paid in the event the judgment of the lower court should be reversed.

It is settled by our jurisprudence that mineral rights constitute a servitude or mere right to go upon the land and explore for and reduce to possession minerals. Frost-Johnson Lbr. Co. v. Salling's Heirs, 150 La. 756, 91 So. 207.

Since the adoption of the Constitution of 1921, these rights are not assessable or taxable either separately or with the land. When minerals are reduced to possession and severed from the land, they become liable to the severance tax provided for by Act No. 140 of 1922. Section 21 of article 10 of the Constitution of 1921 provides:

"Taxes may be levied on natural resources severed from the soil or water, to be paid proportionately by the owners thereof at the time of severance. Such natural resources may be classified for the purpose of taxation and such taxes predicated upon either the quantity or value of the product at the time and place where it is severed. No severance tax shall be levied by any parish or other local subdivision of the State.

"No further or additional tax or license shall be levied or imposed upon oil or gas leases or rights, nor shall any additional value be added to the assessment of land, by rea-

son of the presence of oil or gas therein or their production therefrom."

This section provides, however, that the existing laws as to the taxation of mineral rights shall remain in effect until the Legislature has enacted a severance tax. Therefore, since the passage of the act of 1922, there can be no assessment or taxation of mineral rights, even though they may be of great value and are the subject of barter and sale.

It has been held that the grantee or reserver of mineral rights is not affected by a tax sale under an assessment made subsequent to the acquisition or reservation of said rights. Bodcaw Lbr. Co. v. Cox, 159 La. 810, 106 So. 313; Iberville Land Co. v. Texas Co., 14 La. App. 221, 128 So. 304.

Unquestionably, a tax sale transfers the whole ownership of the property where there has been no dismemberment of the title prior to the sale. A sale of mineral rights constitutes such a dismemberment of the ownership and is a transfer of one of its material elements, in this case valued at $1,000, and amounts to a partial alienation of property. Palmer Corp'n v. Moore, 171 La. 774, 132 So. 229; Wiley v. Davis et al., 164 La. 1090, 115 So. 280.

Under a tax sale, the purchaser acquires a new and complete title in the land under an independent grant from the sovereign authority. Frederick et al. v. Goodbee, 120 La. 783, 45 So. 606.

On and after the 1st of January each year it is the duty of the tax assessor to acquaint himself with and list all taxable property in his parish or district. This list and the resulting assessment is made on the basis of conditions existing on the 1st day of January of the current year. Palfrey v. Connely, 106 La. 699, 31 So. 148; Bunkie Brick Works v. Police Jury, 113 La. 1062, 37 So. 970; Magnolia Petroleum Co. v. Sandlin, 18 La. App. 287, 137 So. 595; section 10, Act No. 170 of 1898.

The tax assessor shall deposit in the office of the recorder of mortgages a copy of the final tax rolls as soon as possible before the 1st day of September of each year. Section 30, Act No. 170 of 1898.

Where the date of the filing of the tax rolls, as in this case, is not proven, it is presumed that the tax assessor has done his duty promptly, and it will be assumed that the rolls were filed within the time required by law. Avery v. Mayo, 161 La. 699, 109 So. 393.

The filing of the tax rolls operates as a lien upon the property assessed therein which, after the 31st day of December of the current year, becomes a legal mortgage. Sections 32 and 33, Act No. 170 of 1898.

A legal mortgage may be general or special, and, except as to the manner of its creation, is subject to the same rules as other mortgages. Articles 3311–3320, Civ. Code.

In the present case, the tax rolls being presumed to have been filed on or before September 1st, the whole and complete ownership of the property then being in the Pecan Belt Land Company, the lien resulting from the filing of the tax rolls attached to the whole property, including both the surface and mineral rights as of that date. On the 31st day of December, at that time there being no recorded transfer of these mineral rights, this lien ripened into a legal mortgage upon the 20 acres. The sale of the mineral rights to Silas Newton, author in title of plaintiffs, made December 11, 1929, was not recorded until January 27, 1930. The whole property, then, at the time of the recording of the sale of the mineral rights, was subject to the legal mortgage for the taxes of 1929. On June 14, 1930, ignoring the above sale and without notice to the record owners of the mineral rights, the 20 acres, under the assessment to the Pecan Belt Land Company, were sold in globo with other lands at tax sale by the sheriff to R. T. Benson, author in title of Sarah A. Vandegaer, and Joe Dover, defendants herein. The deed separating the mineral rights from the land, then, was recorded after the attaching of the legal mortgage but before the date of the tax sale.

Can the security of the holder of a legal mortgage upon land be impaired by the alienation of a part of the complete ownership of that land recorded subsequent to the attaching of the mortgage? We think not. As we see the case, while the mineral rights were not and could not be assessed, the whole property, including the mineral rights, being owned by the tax debtor at the time of the filing of the tax rolls, was affected by the resulting lien and legal mortgage and became security for the payment of the taxes. As the tax sale was but a legal enforcement and consummation of this lien and mortgage, the rights of the tax purchaser dated back to the time it attached to the property, and, unless otherwise invalid, conveyed the mineral rights. It seems to us clear that, if the tax debtor could not have transferred the whole property, aft-

er the attaching of the lien and mortgage so as to defeat them, he could not legally transfer such a part of them as the mineral rights have been held to be. We therefore conclude that the tax sale, if valid, conveyed a complete title. Section 71, Act No. 170 of 1898.

No notice of the intended tax sale was given to the record owners of the mineral rights. Does this failure invalidate the tax sale?

Section 50 of Act No. 170 of 1898 requires that on the 2d day of January, or as soon thereafter as possible, the tax collector shall address to each taxpayer, who has not paid all the taxes which had been assessed to him on immovable property, written or printed notice that his taxes must be paid within twenty days after the service or mailing of said notice, or said property will be sold according to law.

"It is well settled, by repeated decisions of this court, that it matters not in whose name the property has been assessed, the owner of record at the time of the advertisement and sale for taxes is to be regarded as the delinquent tax debtor, within the meaning of the constitutional provision requiring notice to be given to the delinquent before making the sale, and where the notice of delinquency was not given to such recorded owner the tax sale is null and void." Ryals v. Todd, 165 La. 952, 116 So. 395, 398, and cases cited therein; In re LaSalle Realty Co., 171 La. 965, 132 So. 516; Bozeman v. Crichton Co., 16 La. App. 483, 134 So. 293; Berry v. Garrett, 17 La. App. 262, 131 So. 475, 135 So. 701.

■ Therefore, if the record owner of separate mineral rights is entitled to notice of an intended tax sale of the whole property, the tax sale in this case is null and void at least as to the land affected by the separation of the mineral rights. Defendant contends that such an owner is not entitled to notice because, his property, consisting of the mineral rights, being unassessable and not liable for any taxes, he is not a taxpayer or delinquent tax debtor within the meaning of said section 50 of Act 170 of 1898, and section 11 of article 10 of the Constitution of 1921, which provides for the giving of notice to the "delinquent" tax debtor. The word "delinquent" "means the owner at the time of issuing the notices" of sale. Federico v. Nunez, 173 La. 957, 139 So. 18.

"The delinquent is the person who owns the property at the time that the notice of the sale is to be given." Geddes v. Cunningham, 104 La. 306, 29 So. 138, 141.

Notice to one joint owner is not a compliance with the law as to other joint owners. Adsit v. Park, 144 La. 934, 81 So. 430.

The required notice is not so much a notice of delinquency as it is a notice of the intention to sell the property. Recker v. Dupuy, 161 La. 392, 108 So. 782.

■ The owners of the mineral rights at the time of the tax sale were the owners of a real right subject to sale for the taxes for the year 1929. Though they were not the owners of the complete title, they did possess a material and valuable element of complete ownership. This property had become subject to the tax lien and resulting legal mortgage. They, then, were the owners of record of immovable property liable for the taxes at the time of the tax sale. Their right to notice of the intention of the sheriff to sell their property to satisfy these taxes was sacramental. An owner cannot be divested of his property by forced sale without notice or waiver of that notice. They cannot be divested of this material right by the hairsplitting contention that they are not, technically, taxpayers or delinquents. Strictly speaking, there is no such thing as a delinquent owner. Liability for taxes is in rem and attaches only against the property. Under the cases cited, if there had been an alienation of the whole title after the attaching of the tax lien and legal mortgage and before the sale, the vendee was entitled to notice. We can see no reason why this right to notice does not also inure to the benefit of a vendee of a part of the title.

■ We find that an owner of real property about to be sold for taxes is a taxpayer within the meaning of the law and is entitled to the statutory notice; that the failure to give this notice in the present case nullifies and avoids the tax sale of the land in dispute.

■ The second attack upon the validity of the tax sale also presents a most serious question. The published delinquent tax list shows all of the property of the Pecan Belt Land Company, amounting to 3,293.79 acres, to be in ward 1 of above parish. The statement of facts reads: "It is agreed that the land described in and covered by the sheriff's tax deed identified as 'Defendant Exhibit 1,' was assessed in the name of the Pecan Belt Land Company for the year 1929 on the assessment rolls of Sabine Parish, Louisiana, upon six separate Ward assessments, each covering and describing that part of said lands situated within the ward of the Parish of Sabine in which the assess-

ment rolls of Sabine Parish, Louisiana, showing each of the several assessments, the rate of taxation, the valuation and amount of taxes due under each assessment certified by the Clerk of Court, being annexed hereto and marked 'Plaintiff's Exhibit 5.'"

The copies of the assessment rolls show 486 acres, including the 20 in controversy, to be in ward 8, valued at $2,670, and subject to the following taxes:

| | |
|---|---|
| State, 5¾ mills.................... | $ 15.35 |
| Parish, 32½ " .................... | 86.78 |
| Special local taxes—S. D. 34....... | 26.91 |
| S. D. 61....... | 1.11 |
| Total ...................... | $130.15 |

The remainder of the land is unequally distributed through five other wards in which special local taxes are assessed, differing in character, rates, and millage from the special local taxes assessed in ward 8.

The tax deed conveys all the property in globo for taxes, interest, and costs amounting to $880.95. The various taxes for which the property is sold are itemized in the deed but charged against the land as a whole; the result appearing to be that the various parcels of land were sold for taxes for which they were not assessed.

In view of the fact that we have already found the tax sale void as to the 20 acres for lack of notice, we have not gone into this last question at great length, so will only say that the tax sale is void also on the second ground urged.

Section 11 of article 10 of the Constitution of 1921 provides: "No judgment annulling a tax sale shall have effect until the price and all taxes and costs paid, with ten per cent per annum interest on the amount of the price and taxes paid from date of respective payments, be previously paid to the purchaser."

In their alternative demand, the defendants allege that the consideration for the whole property conveyed by the tax deed was $880.95, and that the tax paid upon the 20 acres for 1930 was $5.75, and that, if the tax sale is annulled, they should have judgment against plaintiffs in this total amount. But plaintiffs are only seeking the annullment of the tax sale in so far as it affects their ownership of the mineral rights in 20 acres, against which no taxes have been separately assessed. The taxes paid by defendants were upon the whole property, including both the surface and mineral rights. As we can

annul the tax sale only as to rights of these plaintiffs, the former owners of the surface rights not being before the court, the burden is upon the defendants to show what proportion of the price was paid for the mineral rights. This not being done, perhaps for the reason that it is impossible, we cannot give him judgment.

For the reasons assigned above, the judgment appealed from is reversed, and judgment is now rendered recognizing plaintiffs, W. H. Barthold and Joseph E. Bauer, to be the owners of the mineral rights in the west half of the northwest quarter of the northeast quarter of section 35, township 8 north, range 12 west, Sabine parish, La., and quieting and maintaining them in said ownership and possession.

There is further judgment avoiding and annulling the tax sale by W. F. Skinner, sheriff, in the name of the Pecan Belt Land Company, to R. T. Benson and Joe Dover, dated June 14, 1930, recorded in Conveyance Book 49, page 585, of the records of Sabine parish, in so far as it affects the mineral rights in said 20 acres; defendants to pay the costs of both courts.