ROGERS, Justice.
 

 William M. Deas brought this suit against Charles W. Lane, Jr., to have decreed extinguished by the prescription of ten years liberandi causa a one-fourth mineral interest claimed by defendant in the NW% of SE%, SE% of SEji, and N% of sw>4 of SE^, Section 12, Township 19 North, Range 6 West, in the Parish of Claiborne. The court below sustained the plea of prescription and ordered the cancellation and erasure from the parish records of the instruments on which defendant’s claim is based. Defendant has appealed.
 

 The facts are admitted. They are as follows: On February 4, 1920, Deas sold the property here involved to J. S. Me
 
 *938
 
 Conathy, reserving to himself all the minerals therein, including oil and gas. This deed was duly recorded. , On August 16, 1920, McConathy sold the property to Albert Williams with reservation of all the mineral rights owned by Deas. The reservation in these deeds created a mineral servitude in favor of Deas against which, for the purpose of this suit, it is admitted the prescription of ten years for nonuse began to run on August 16, 1920.
 

 In 1925 Deas sold to various parties an undivided interest in the minerals in and under and that might be produced from the land. Among these sales was one to Charles W. Lane, dated April 28, 1925, conveying a one-fourth (1/4) interest in the minerals. On December 29, 1925, this mineral interest was conveyed by Charles W. Lane to Charles W. Lane, Jr. Both mineral deeds were recorded in the conveyance records of Claiborne Parish. On April 22, 1925, Deas sold a one-fourth (1/4) mineral interest in the property to W. H. Hodges, Jr., and on May 28, 1925, he sold to Hodges a one-eighth (1/8) mineral interest in the NWJ4 of SEJ4 of Section 12. On June 1, 1925, Deas conveyed to W. F. Chapman a one-fourth (1/4) mineral interest in the N% of SW^ of SE^, SEJ4 of SEJ4 of Section 12. On the same day, Deas sold to T. G. Hibbler a one-eighth (1/8) mineral interest in the NWJ4 of the SE^ of Section 12. On July 2, 1924, Albert Williams resold the property to J. S. McConathy, and on February 26, 1929, McConathy sold the property to R. L. Williams. On September 5, 1930, R. L. Williams sold the property to William M. Deas. This deed was recorded in the conveyance records of Claiborne Parish in Book 79, page 434.
 

 On December 8, 1933, in order to avoid litigation and in consideration of the sum of $250 paid by Hodges to Deas, they entered into a written agreement whereby Deas ratified and confirmed the title of Hodges to one-fourth (1/4) of the minerals in and under the property here involved. On the same day, Hodges sold a one-eighth (1/8) interest in the minerals to W. S. Deas, the son of Wm. M. Deas. On December 4, 1940, Hodges sold all his right, title and interest in the minerals to W. S. Deas. On January 4, 1941, W. S. Deas, conveyed all his rights, titles and interests in the minerals to William M. Deas.
 

 On August 24, 1928, and on May 1, 1929, W. F. Chapman sold to various parties the one-fourth (1/4) mineral interest which he had acquired from William M. Deas. Among these purchasers was James M. Melton, who acquired a one thirty-sixth (1/36) interest in the one-fourth (1/4) mineral interest acquired by Chapman. Melton died intestate in April 1934, and his interest in the minerals, if he had any, became vested in his- surviving widow in community and three minor children.
 

 In the months of November and December, 1940, William M. Deas entered into a written agreement with each of the parties owning the one-fourth (1/4) mineral interest sold by Deas to Chapman. In these agreements it was expressly stipulated that, as respects the parties to the agreement, the prescription applicable to their rights was interrupted as of October 9, 1940.
 

 
 *940
 
 As we have stated, it is admitted that the.ten years prescription of nonuse of the servitude began to run on August 16, 1920, and that no use was made of the servitude at any time prior to August 16, 1930. In fact no drilling or mining operation of any kind took place until the year 1941, when the holder of a mineral lease from the plaintiff, Wm. M. Deas, executed on October 9, 1940, drilled a well on the property which proved to be a producer of oil in paying quantities.
 

 Plaintiff’s position is that on August 16, 1930, ten years having elapsed' from the creation of the servitude, during which period it was not used and had not been acknowledged and there were no minors or other persons against whom prescription could not run, the servitude expired or became extinguished.
 

 The defendant takes the position that the prescription of nonuse has not run against the mineral interest acquired by him and it is still in full force and effect, for a number of reasons which he sets forth in his answer.
 

 The first and principal contention made by defendant is that the sales made by Deas to Hodges, Lane, Hibbler, and Chapman in the year 1925 were sales of a servitude which was in existence for a period of ten years, even though no use was made thereof; that the effect of the warranty mentioned in the deeds was to guarantee to each of the purchasers a period of ten years for the exercise by each of them of the right which they acquired; that each of the parties purchasing from the plaintiff in 1925 had, until some time in the ye.ar 1935, the right to exercise the servitude acquired by them.
 

 Other contentions of defendant are that the effect of the agreement between plaintiff and Hodges, executed in December, 1933, was to interrupt the running of prescription with respect to the mineral interest claimed by defendant; that the fact that James M. Melton, who had acqtdred a one thirty-sixth (1/36) interest through mesne conveyance emanating from W. F. Chapman, to whom plaintiff, in 1925, conveyed a one-fourth (1/4) mineral interest in a portion of the land, died in 1934, leaving as his heirs minor children, who are still minors, suspended and has continued to suspend the running of the prescription applicable to the rights claimed by defendant; that the effect of the compromise agreements, executed in 1940 by plaintiff with those who had acquired the one-fourth (1/4) mineral interest conveyed by plaintiff to Chapman, was to vest in defendant the same rights and benefits.
 

 Defendant sets up in a plea of estoppel, as an alternative defense, that if the fore-' going contentions are not sustained, under Article 792 of the Civil Code prescription did not toll against the servitude because of an alleged obstacle, and that the doctrine of contra non valentem is applicable.
 

 It is well settled that the sale or reservation of the mineral oil or gas in a tract of land constitutes a sale or reservation merely of a real right, or personal' servitude, to go upon the land and explore for oil or gas and to possess and own such oil or gas as may be produced; and such a real right or servitude is lost by the
 
 *942
 
 prescription of ten years, liberandi causa, if the owner of the right, being not the owner of the land itself, fails to exercise the right for a period of ten years. Palmer Corporation v. Moore, 171 La. 774, 132 So. 229, and authorities cited. Therefore, it •can not be disputed, and in fact, it is not disputed that the mineral rights, which were reserved when William M. Deas sold the land to J. S. McConathy and- Mc-Conathy, in turn, sold the land to Albert Williams, were lost as to Deas and his assigns by the prescription of ten years liberandi causa, unless the running of the prescription was interrupted as alleged in the answer filed by the defendant.
 

 In considering the primary question presented for decision, we find that the warranty mentioned in the deeds evidencing the sales by. plaintiff to Hodges, Hibbler, Chapman, and C. W. Lane, Sr., the immediate author in title of the defendant, is in the usual form. The warranty clause in each deed is expressed in these words: “With full guarantee of title and with complete transfer and subrogation of all rights and actions of warranty against all former proprietors of the property here conveyed.” This language does not add to or take from the warranty that would have existed even without any express mention.
 

 Article 2475 of the Civil Code declares that the seller is bound to two principal obligations, that of delivering and that of warranting the thing which he sells. Article 2477 provides that the tradition or delivery is the transferring of the thing sold into the power and possession of the buyer. And Article 2481 provides that the tradition of incorporeal rights is to be made either by the delivery of the titles and of the act or transfer, or by the use made by the purchaser, with the consent of the seller. Article 2646 declares that he who sells a credit or an incorporeal right, warrants its existence at the timé of the transfer though no warranty be mentioned in the deed. According to Article 2501, if no stipulations have been made respecting the warranty at the time of the sale, the seller is obliged to warrant the buyer against the eviction suffered by him from the totality or part of the thing sold, and against the charges claimed on such thing, which were not declared at the time of the sale. Article 2500 defines eviction to be the loss suffered by the buyer of the totality of the thing sold, or a part thereof, occasioned by the right or claims of a third person. The scope of the implied warranty is set forth in Article 2502 in these words: “That the warranty should have existence, it is necessary that the right of the person evicting shall have existed before the sale. If, therefore, this right before the sale was only imperfect, and is afterwards perfected by the negligence of the buyer, he has no claim for warranty.”
 

 In applying the foregoing provisions of the Code dealing with the subject of warranty to the question now under consideration, it is to be observed that the sale from plaintiff to C. W. Lane Sr., and from Lane, Sr., to C. W. Lane, Jr., was in each instance the sale of an incorporeal right. Civil Code, Articles 470 and 471; Frost-Johnson Lumber Co. v. Sailing’s Heirs, 150 La. 756, 91 So. 207; Vander
 
 *944
 
 Sluys v. Finfrock, 158 La. 175, 103 So. 730; Palmer Corporation v. Moore, 171 La. 774, 132 So. 229. Neither conveyance involved the creation of a servitude.
 

 It is not disputed that, so far as it is possible to do so, plaintiff complied with his obligation of delivering the incorporeal right that he sold to C. W. Lane, Sr. There being no evidence of any additional agreement, plaintiff’s obligation as a warrantor rests upon the warranty of title expressed in the deed and upon the implied warranty provided by law as to the existence of the incorporeal right sold, as to any charges claimed against the right at the time of the sale, and against the eviction of the purchaser by a person asserting a right existing before the sale.
 

 The incorporeal right transferred by plaintiff to C. W. Lane, Sr., was in existence at the time of the sale and plaintiff’s title thereto was valid. There were no encumbrances resting upon the right at the time of the sale and neither C. W. Lane, Sr., nor the defendant who acquired the right from him, suffered a loss either of the whole' or of a part of the right by the claims of a third party existing before the sale. The reason why defendant lost his right on August 16, 1930, was not due to any defect in the title or by the claims of the plaintiff, or to any pre-existing claim of a third person, but was due solely to the failure of defendant to use his right and thus prevent the accrual of prescription. We know of no law, and we have not been referred to any, that obligates the seller of an incorporeal right to warrant that the right will not become lost subsequently by prescription. In fact, the vendor is not even precluded by his warranty from seeking to re-acquire by prescription the property he has sold. Succession of Zebriska, 119 La. 1076, 44 So. 893.
 

 Defendant relies on the case of Tomlinson v. Thurmon, 189 La. 959, 181 So. 458, but that case does not support plaintiff’s position. In that case the purchaser of a mineral lease was evicted therefrom by the foreclosure of a prior undeclared mortgage on the property. The court properly held that a mineral lease is an incorporeal right and that, under his implied warranty,, the lessor was liable for the return of the purchase price, because of the eviction of the purchaser on account of a pre-existing mortgage. But that is not the case here. As heretofore pointed out, the reason why defendant lost his right was not because of the existence of a pre-existing charge or encumbrance thereon, but because of his, negligence in failing to use his right and. thus prevent the accrual of the prescription.
 

 Under his plea of estoppel defendant sets up three alternative defenses to plaintiff’s action. The first defense is that by the agreement he made with W. H. Hodges, Jr., in 1933, after he had re-acquired the property by purchase from R. L. Williams, plaintiff ratified and confirmed the title to the one-fourth mineral^ interest which was vested in Hodges in 1925; that the servitude in which Hodges acquired the one-fourth interest was an indivisible right, and that an indivisible right may not be kept alive as to part and pass out of existence-as to part; that the effect of the agreement
 
 *946
 
 between plaintiff and Hodges was to preserve and keep alive not only the one-fourth mineral interest owned by Hodges, but also the entire servitude in which defendant and other persons had acquired rights.
 

 An examination of the agreement, .a copy of which appears in the transcript at page 35, fails to disclose, as argued in defendant’s brief, that it contains any renunciation by plaintiff of the accrued prescription. The only reference to prescription appearing in the agreement is in these words used in setting forth the facts, to-wit: “That prescription was interrupted .as to said mineral reservation on August 16, 1920, by virtue of an acknowledgement contained in a deed as recorded in Conveyance Book 23, page 427, of the records of Claiborne Parish, Louisiana; * * *49_
 

 The deed referred to in this statement is the deed whereby, on August 16, 1920, J. S. McConathy sold the property to Albert Williams, subject to the mineral rights reserved by W. M. Deas, his vendor. This deed was recorded on August 24, 1920, in conveyance book 23, page 427, of the records of Claiborne Parish. Tr. pp. 32, 33 and 34.
 

 August 16, 1920, is the date which the parties to this suit agree is the date on which the ten-year prescription set up by plaintiff began to run. So far as we are able to find, the running of this prescription has never been renounced by plaintiff. The prescription, which is referred to as being interrupted in the agreement between Deas and Hodges, is obviously the prescription which began to run on February 4, -1920, when Deas, the then owner, with reservation of the mineral rights, sold the property to J. S. McConathy.
 

 Defendant’s argument based on the legal principle that an indivisible right may not be kept alive as to part and cease to exist as to part is not applicable to the facts of this case. Here the servitude created on August 16, 1920, expired on August 16, 1930. The question as to whether an indivisible right was kept alive is not an issue before the court. In each of the cases of Sample v. Whitaker, 172 La. 722, 135 So. 38; Ford v. Williams, 189 La. 229, 179 So. 298; State ex rel. Bourgaux v. Fontenot, 192 La. 95, 187 So. 66; and Ohio Oil Co. v. Cox, 196 La. 193, 198 So. 902, cited by defendant, something happened while the servitude was in force, which had the effect of suspending or interrupting the running of prescription. In this case, the servitude claimed by the defendant became wholly extinguished in 1930 before the happening of any of the events relied on by defendant as perpetuating his rights. The agreement between Hodges and the defendant was a compromise entered into between the parties in order to avoid litigation over the ownership of a one-fourth mineral interest claimed by both. Hodges also paid defendant as part of the consideration for the' interest acquired by him the sum of $250 and further agreed that the interest thereby acquired would be reconveyed to plaintiff upon the happening of a particular event. This event subsequently happened. The agreement really amounted to the con
 
 *948
 
 veyance by plaintiff to Hodges of an entirely new right of a different type which was to become extinguished under different conditions.
 

 What is hereinabove stated with respect to the agreement made between plaintiff and Hodges in 1933 applies with equal force to the agreements made in 1940 by plaintiff with other parties, not parties to this suit, claiming mineral interests in the property. The obligation assumed by plaintiff in each of the agreements was a separate and distinct obligation in favor of the other party to the agreement and was wholly unconnected with the obligation assumed by plaintiff in favor of the parties to the other agreements.
 

 It is difficult to understand how the original servitude created in 1920 could be revived or continued as the result of the agreements entered into between Deas and his vendees of mineral interests in 1933 and 1940 after Deas had reacquired the land. In order.to hold this, it also would be necessary to hold that Deas became the part-owner of a servitude on his own land, which is a type of ownership that is not recognized by the’ laws of this State.
 

 The next alternative defense is that the running of prescription was suspended against the minor children of James M. Melton and their co-owners of the original mineral servitude, one of whom is the defendant in this case. On May 1, 1929, James M. Melton acquired from G. G. Nesbitt, a vendee of W. F. Chapman, who, in turn, was a vendee of W. M. Deas, a one thirty-sixth interest in the mineral servitude created in 1925. Melton died intestate in 1934, leaving a widow in community and three minor children who are still minors. The success of this defense necessarily depends upon the maintenance of defendant’s position that the servitude was revived or continued in its entirety by plaintiff’s acquisition of the land in. 1930. We have found this contention to-be untenable.
 

 The servitude had been extinguished by prescription long prior to the death of Melton. On December 6, 1940, when plaintiff entered into the agreement with the widow of Melton, individually and as tutrix of her minor children, the original servitude had expired. The obligation incurred by plaintiff in the agreement in favor of Mrs. Melton and her children was a separate obligation unconnected with any obligation of plaintiff towards any other person. In these circumstances, the minority of the Melton children is not sufficient to protect from extinction by prescription the interest that defendant acquired in the original mineral servitude.
 

 The obligation assumed by plaintiff in each of the agreements entered into subsequent to his reacquisition of the property was a separate and distinct obligation in favor of the other party to the agreement and was wholly unconnected with the obligation assumed by plaintiff in favor of the parties to the other agreements.
 

 The last alternative defense is that defendant was prevented from using his-servitude by an obstacle that he could neither prevent nor remove, and hence, prescription did not run against his mineral
 
 *950
 
 right during the period of time the obstacle ■existed.
 

 In the months of February and June, 1930, R. L. Williams, who was then the ■owner, executed four sales of mineral interests in the land. The mineral interests thus conveyed amounted in the aggregate to three-fourths of the entire mineral interests, so that when W. M. Deas, the plaintiff, purchased the property from R. L. Williams on September 5, 1930, he ac■quired only a one-fourth mineral interest along with the land. Based on these facts, and giving effect to the agreement entered into on December 8, 1933, between Deas and Hodge's, defendant argues that the title to the entire mineral interest in the land became vested in parties other than plaintiff. That this title remained in effect from August 16, 1930, until the vendees of the three-fourths mineral interest sold by Williams in 1930 lost their rights on August 16, 1940, by the prescription of nonuse. That for the period of ten years from August 16, 1930, to August 16, 1940, ■or until plaintiff acquired by prescription the mineral rights sold by Williams, defendant could not exercise his right to use the one-fourth mineral interest acquired by him from C. W. Lane, Sr., the vendee of plaintiff. That since Deas was the warrantor of defendant’s title to a one-fourth mineral interest, Deas, as the owner ■of the land when the minerals became reinvested in him by prescription in 1940, ■could not deny to the defendant the ownership of the one-fourth mineral interest created. in 1920, thereby keeping defendant’s right alive until May 1, 1945.
 

 It is plain that Deas was not obliged to recognize defendant’s right after that right had lapsed for nonuse during a period of ten years. Certainly defendant is not in a position to complain of any obstacle which may have arisen after August 16, 1930, the date on which he lost his right. The sales by Williams of the mineral rights in 1930 could not prejudice the right of defendant and the other parties who acquired mineral rights, which were created in 1920 and which were duly placed of record. Coyle v. North Central Texas Oil Co., 187 La. 238, 174 So. 274; Gailey v. McFarlain, 194 La. 150, 193 So. 570.
 

 Defendant never used or attempted to use his mineral right. He was not disturbed in his possession of that right. He never suffered any loss of either the whole or a part of his right by the actions or claims of third persons. He was never prevented from using the right by any cause or by any person. On the contrary, he sat idly by and permitted the liberative prescription to accrue. No use was made of the property until the year 1941 when the holder of a lease from plaintiff executed on October 9, 1941, brought in a producing well thereon.
 

 In the case of Gayoso Co., Inc., v. Arkansas Natural Gas Corporation, 176 La. 333, 145 So. 677, this court held that the granting of a mineral lease to another by the purchaser of land 'prior to ten years before the expiration of the reservation of mineral rights made by the vendor did not constitute the placing of an obstacle, preventing the use of the reservation so as
 
 *952
 
 to suspend the running of prescription for nonuse.
 

 And in the case of Gailey v. McFarlain, 194 La. 150, 193 So. 570, this court held that an outstanding mineral lease on land upon which a mineral servitude was subsequently granted does not constitute an obstacle which would affect the running of the prescription of nonuse against the grantee of the servitude.
 

 Our conclusion is that the sale of mineral interests made by R. L. Williams in 1930 did not constitute an obstacle which suspended the accrual of the liberative prescription pleaded by the plaintiff in this case.
 

 The case of White v. Hodges, 201 La. 1, 9 So.2d 433, and the case of St. Landry Oil & Gas Co., Inc., v. Neal, 166 La. 799, 118 So. 24, therein referred to,’which are cited by defendant, are not applicable to the issues involved in this case.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 HAMITER, J., absent.