WILLIAMS, J.
| plaintiff, Sapphire Land Company, LLC, appeals a trial court judgment in favor of defendants, the Parish of Caddo, Chesapeake Louisiana, L.P. and Chesapeake Operating, Inc. The trial court found that the tax collector complied with all notice requirements; therefore, the tax adjudications were valid. The court also found that any interest plaintiff may have acquired in the property in question is subject to defendants’ recorded lease. For the following reasons, we affirm.
FACTS
The property in question consists of approximately two acres of land located in Caddo Parish. It is described as Lot 7 of Golden Place Subdivision and is situated within the Haynesville Shale, an area known for extensive oil and gas exploration.
On April 3, 1986, James William Ebey purchased the property from Preferred Properties of Shreveport, Inc. (“Preferred Properties”).[1] The credit sale deed was recorded in the Caddo Parish Conveyance Records on April 14, 1986. Thereafter, the 1986 taxes due on the property were not paid. Consequently, the Caddo Parish Sheriff and Ex-Officio Tax Collector for the Parish of Caddo (“tax collector”) recorded a proces verbal, dated June 2,1987, in which he certified as follows:
|2That the attached list is a true and complete list of all tax debtors owing delinquent taxes on immovable property for the year of 1986.
That I have mailed certified notices, with return receipt requested, to each delinquent tax debtor on March 4, 1987 as required by R.S. 47:2180.
That the taxes for 1986 on the attached list of assessments are still due and unpaid.
[[Image here]]
*125 Preferred Properties, which owned the property in January 1986, was listed as a tax debtor.[2]
Subsequently, a tax sale was held at which the property was sold to “Smith, Bill W., husband of Dorothy W. Smith.” The tax collector executed a tax deed conveying the property to Smith; this deed was recorded in the Caddo Parish conveyance records on the day of the tax sale. The deed also indicated that an announcement had been placed in the Shreveport Journal for 30 days, beginning April 1,1987, notifying the public that the property would be offered for sale at a tax sale on May 6, 1987.
Following the sale, the tax collector sent notice to Ebey, via certified mail, return receipt requested, that the property had been sold at a tax sale. The notice also informed Ebey of his right to “redeem the property at any time within three years of the date of the recordation of the sale.” The computer-generated address on the notice indicated that it was mailed to Ebey at “708 West 70th Street” Shreveport, Louisiana, the address listed on lathe credit sale deed from Preferred Properties to Ebey. However, the documents introduced into evidence reveal that an unidentified person handwrote “71st” over the “70th” in the address portion of the mailing. Robert Williams testified that he was not employed in the tax division at the time of these events; therefore, he had no personal knowledge of whether or not the notice that the property had been sold was, in fact, mailed to 708 West 70th Street or 708 West 71st Street.
The 1987 taxes were not paid. The tax collector mailed a certified notice of delinquency to James William Ebey at “708 West 70th St. Shreveport, LA.” The notice was returned undeliverable. The notice of delinquency also shows that, in the address portion of the notice, someone handwrote “Bill W. Smith” and the address listed for him in the 1987 tax deed.[3] Subsequently, the tax collector executed a proces verbal, dated June 8, 1988, in which he certified as follows:
That the attached list is a true and complete list of all tax debtors owing delinquent taxes on immovable property for the year of 1987.
That I have mailed certified notices, with return receipt requested, to each delinquent tax debtor on March 4, 1987 as required by R.S. 47:2180.
That the taxes for 1987 on the attached list of assessments are still due and unpaid.
[[Image here]]
James William Ebey was listed as a tax debtor, and his address was listed as “708 West 70th Street.”
Soon thereafter, the property was offered for bid at a tax sale.' No |4bids were received at the tax sale; therefore, the property was adjudicated to Caddo Parish. The certified tax adjudication deed was recorded on June 10, 1988. According to the attestation contained within the adjudication documents, the property had been advertised in the Shreveport Journal prior to the tax sale, as required by law. Additionally, Mr. Williams testified that it was *126 the habit and custom of the Caddo Parish sheriff to advertise the property in the Shreveport Journal prior to a tax sale.
In October 2009, Caddo Parish, through the State Mineral and Energy Board, leased the property to Classic Petroleum, Inc. for exploration of oil, gas and other minerals. Classic Petroleum assigned its rights under the lease to defendant, Chesapeake Louisiana, LP (“Chesapeake Louisiana”). Thereafter, the Louisiana Commissioner of Conservation created a unit known as “HA RA SUKK” for Section 31, Township 16 North, Range 15 West, Cad-do Parish, Louisiana. This unit consists of 564.898 acres; Chesapeake Operating, Inc. (“Chesapeake Operating”) was designated as operator of the unit. The property in dispute is located within this unit. In August 2009, Chesapeake Operating drilled and completed a unit well inside the.unit.
In 2010, plaintiff, Sapphire Land Company, LLC, purchased the interests of the Ebey and Smith heirs by quit claim deeds; the deeds were recorded in August and September 2010.[4] The quit claim deeds stated that they were “made subject to all restrictions, right of way grants, and |.^servitudes of public record.”[5] By the time plaintiff purchased its interest in the property, Caddo Parish’s property rights had been recorded for nearly 22 years; the mineral lease was also recorded in the public records.
. In the’ latter part of 2010, plaintiff paid the 1987 taxes on the property. On October 28, 2010, the tax collector issued a certificate of redemption to plaintiff for the amount of taxes, costs, penalties and interest for the year 1987.
On November 12, 2010, plaintiff sent to Chesapeake Operating and Chesapeake Louisiana letters in which it claimed to be an “unleased owner” of the property. Plaintiff also demanded that the property be partially released from the mineral lease and that it be sent certain accounting reports as an unleased mineral owner. Defendants did not release the property from the mineral lease and did not send the accounting reports.
On January 20, 2011, plaintiff filed this lawsuit, alleging that the mineral lease was absolutely null ab initio. Specifically, plaintiff alleged: (1) the tax sales were absolute nullities because the tax collector failed to send notice to Ebey and Smith prior to the sales; (2) defendant, Caddo Parish, was not judicially placed in possession of the property prior to granting the lease; (3) Caddo Parish failed to allocate any of the bonus revenue or royalty payments, to the past due taxes, as required by LSA-R.S. 47:2233; (4) plaintiffs ancestors in title were entitled to receive notice before Caddo Parish transferred the mineral lease; and (5) plaintiff is an unleased owner of the minerals, thus it is entitled to a sworn, detailed [(¡itemized statement of the costs of the drilling operations.[6]
*127 Following a trial on the merits, the trial court found that plaintiff failed to meet its burden of proof and dismissed the claims with prejudice. More specifically, the trial court stated:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Caddo Parish Sheriff and Ex-Officio Tax Collector complied with all notice requirements for the 1988 tax sale, resulting in a valid and enforceable tax adjudication; the mineral lease granted by the State Mineral and Energy Board of the State of Louisiana, on behalf of the Parish of Caddo, to Classic Petroleum, Inc. in 2009, and subsequently acquired by Chesapeake Louisiana, L.P. in 2009 is valid and enforceable; and any interest Sapphire Land Company, L.L.C. may have acquired in the subject property by redemption in 2010, is subject to the recorded lease.
Plaintiff appeals.
DISCUSSION
Plaintiff contends the trial court erred in failing to find that the redemption of the 1988 tax adjudication rendered the mineral lease invalid. Plaintiff argues that the lease between Caddo Parish and Chesapeake dissolved when the past due taxes were paid and the tax collector issued a certification of redemption.
The property sold at a tax sale shall be redeemable for three years after the date of recordation of the tax sale, by paying the price given, including costs, five percent penalty thereon, and interest at the rate of one percent per month until redemption. La. Const. Art. VII, § 25(B). | .¡Redemption is subject to a three-year peremptive period that runs from the date of recordation of the tax sale. Harris v. Estate of Fuller, 532 So.2d 1367 (La.1988). Upon expiration of the three-year period without redemption, the tax title is valid and redemption is no longer available to the tax debtor, whose only recourse is to attack the validity of the tax sale as provided by law. Securities Mortg. Co. v. Triplett, 374 So.2d 1226 (La.1979).
In the instant case, the tax adjudication to the parish occurred in 1988; the tax adjudication deed was recorded on June 10, 1988. More than 20 years after the adjudication, plaintiff acquired the property by obtaining quitclaim deeds from the heirs/legatees of Ebey and Smith, and purportedly “redeemed” the property by paying the taxes due. Plaintiffs act of “redeeming” the property did not affect the mineral lease because the period for redemption expired on June 10, 1991, three years after the tax adjudication deed was recorded. The tax debtor’s failure to redeem the property within this three-year period limits plaintiff to an action to annul the tax sale. Thus, the assignment of error lacks merit.
Plaintiff also argues that because the 1988 tax sale was invalid, the subsequent tax adjudication to Caddo Parish was an absolute nullity. Specifically, plaintiff argues that the 1988 proces verbal was invalid because it did not identify Bill and Dorothy Smith as delinquent tax debtors, and it did not specify how service of the notice was made on Ebey.[7]
|sThe sale of property for nonpayment of taxes is an action affecting a property right protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. There *128 fore, as a minimum constitutional precondition to such a proceeding, notice must be sent by mail or other means certain to ensure actual notice if the party’s name and address are reasonably ascertainable. Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).
La. Const. Art. VII, § 25 also requires the tax collector to provide notice to a delinquent taxpayer. In former LSA-R.S. 47:2180, which was in effect at the time of the tax sale in this case, the legislature set forth the manner by which a notice of delinquency in immovable property taxes must be provided in compliance with La. Const. Art. VII, § 25 and Mennonite. Under the provisions of former LSA-R.S. 47:2180, the tax collector was required to provide a taxpayer, who has not paid all the taxes which have been assessed to him on immovable property, with a written notice specifying that the taxes are delinquent, the amount of taxes due, and the manner in which the property may be redeemed.[8] • If a proces verbal is Improperly executed and filed, then the burden of establishing that no notice was given rests on the tax debtor. Pardon v. Moore, 39,949 (La.App.2d Cir.8/17/05), 908 So.2d 1253.
In the instant case, the record reveals that the tax collector mailed a certified notice of delinquency to James William Ebey at “708 West 70th St. Shreveport, LA,” notifying him that the 1987 taxes were delinquent. The record also demonstrates that the notice was sent to the same address that appeared on the credit sale deed from Preferred Properties to Ebey. The notice was returned undeliverable. The record further indicates that the notice of delinquency was mailed to Bill Smith, as his name and address appeared on a copy of *129 the notice, albeit, handwritten. Thereafter, the tax-collector executed a proces verbal, dated June 8, 1988, in which he certified as follows:
That the attached list is a true and complete list of all tax debtors owing delinquent taxes on immovable property for the year of 1987.
That I have mailed certified notices, with return receipt requested, to each delinquent tax debtor on March 4, 1987 as required by R.S. 47:2180.
That the taxes for 1987 on the attached list of assessments are still due and unpaid.
[[Image here]]
The proces verbal also listed James William Ebey as a tax debtor, and his address was listed as “708 West 70th Street,” the address which appeared in the public records. The properly executed proces verbal creates a presumption that valid notice of the tax sale was given and, thus, the tax debtor has the burden of proving lack of notice. Additionally, the tax adjudication deed reveals that the property and pending tax sale had been advertised in the Shreveport Journal prior to the tax sale, as required by law.
As evidenced by the tax sale adjudication in the record, and confirmed by the testimony of the tax department’s director, after the initial mailing to Ebey was returned, further notice of the impending sale appeared in the local newspaper in compliance with LSA-R.S. 47:2180(B).[9] Plaintiff failed to rebut the presumption that the tax sale was valid. Accordingly, we find that this record supports the trial court’s determination that the tax collector took steps reasonably calculated to apprise the owners of the tax h delinquency and the impending tax sale.
Plaintiff further contends Caddo Parish failed to commence proceedings to be placed in actual possession of the property, as required by LSA-R.S. 47:2281-2233. Therefore, plaintiff claims to be the un-leased owner of the property and the lease granted by the parish to Classic Petroleum, which was later assigned to Chesapeake, is an absolute nullity.
The Revised Statutes, Title 47, relative to the collection of delinquent ad valorem taxes, authorizes a political subdivision to take ownership of property adjudicated to it following a tax sale. Pursuant to the statutes, a political subdivision may file a petition and obtain a judgment to be placed in actual possession of the property. Thereafter, the political subdivision may lease the adjudicated property and collect rent therefor.[10] Additionally, *130 _jjjwhen property is adjudicated to the state for delinquent taxes, title passes to the state, subject to the right of redemption; and if the right is not seasonably exercised, the title to the state becomes absolute. Wood v. Board of Com’rs for Pontchartrain Levee Dist., 338 So.2d 744 (La.App. 4th Cir.1976), writ denied, 341 So.2d 5 (La.1977).
In the instant case, it is undisputed that Caddo Parish did not institute a lawsuit to take possession of the property prior to entering into the mineral lease. Under the provisions set forth in LSA-. R.S. 47:2231 and 2233, the filing of a lawsuit to be placed in possession is discretionary. Also, these provisions do not prohibit the state from leasing the minerals under the more specific provisions of the Mineral Code.[11] We note that the parish did |1snot lease the property itself; it merely leased the mineral rights,[12] which are neither assessable nor taxable. See, La. Const. Art. VII §§ 4 and 21. Therefore, we find that the trial court did not err in concluding that the provisions set forth in Title 47 of the Revised Statutes do not apply to the mineral lease. Accordingly, we find that the parish’s failure to institute an action to take possession did not affect the adjudication of the property to the parish, nor did it affect the parish’s right to enter into the mineral lease.
Additionally, we find no error in the trial court’s conclusion that any interest plaintiff may own in the property is subject to the mineral lease recorded on January 27, 2010. LSA-R.S. 9:2721(C) provides that anyone who acquires immovable property encumbered by a recorded lease “shall take the property subject to all of the provisions of the lease,” provided that the lease was recorded prior to the deed of the person who acquires the property. Sparks v. United Title & Abstract, LLC, 45,766 (La.App.2d Cir.12/15/10), 56 So.3d 302, writ denied, 2011-0030 (La.2/18/11), 57 So.3d 337. The quit claim deeds between plaintiff and the heirs of Ebey and Smith specifically provide that the heirs sold their interests in the property “[sjubject to all restrictions, right of way grants, and servitudes of public rec *131 ord.” Both the Classic Petroleum lease and the assignment to Chesapeake were recorded in the public records prior to plaintiffs 114recordation of its deed. Therefore, the trial court did not err in determining that plaintiff acquired the property subject to the Chesapeake lease.
CONCLUSION
For the reasons set forth herein, the trial court’s judgment in favor of defendants, the Parish of Caddo, Chesapeake Louisiana, L.P. and Chesapeake Operating, Inc., is hereby affirmed. Costs of the appeal are assessed to plaintiff, Sapphire Land Company, LLC.
AFFIRMED.
APPLICATION FOR REHEARING
Before WILLIAMS, CARAWAY, MOORE, LOLLEY, and PITMAN, JJ.
Rehearing denied.

. Preferred Properties purchased the property from Elisabeth Adams Sutton, Lester Lavergn Lander and Alicia Gaye Sutton Tucker in 1984. A certified copy of the credit sale to Preferred Properties was recorded in the Cad-do Parish Conveyance Records on November 12, 1984. Sutton, Lander and Tucker reserved for themselves, their heirs and assigns the ownership of one-half of all the oil, gas and other minerals in, to and under the property. Following the sale to Ebey, Preferred Properties reserved unto itself, its heirs and assigns, the remaining one-half ownership of all oil, gas and mineral rights, subject to any prior mineral reservations.' Both mineral reservations eventually expired for nonuse (a mineral servitude is extinguished by prescription resulting from nonuse for 10 years. LSA-R.S. 31:27).

. Robert Williams, director of the tax department of the Caddo Parish Sheriff's Office, testified that prior to 2008, a proces verbal consisted of a compilation of all properties for . which delinquent taxes were due. The compiled list was mailed to each of the tax debtors listed. He also testified that the sheriff's office obtained the records from the Caddo Parish Tax Assessor's office; those records listed Preferred Properties as the "taxpayer” for the property at issue.

. Mr. Williams testified that he did not know whether the notice was, in fact, mailed to Smith.

. James William Ebey died intestate on November 29, 1999. Bill W. Smith died testate on February 21, 2001. Smith named his wife, Dorothy W. Smith, as his universal legatee. Mrs. Smith died on September 6, 2003; her residual legatees were the Co-Trustees of the Dorothy and Bill Smith Endowment Trust.

. On October 25, 2010, plaintiff purportedly sold the property to Adan and Karen Chavez, reserving the mineral rights to the property.

.Plaintiff and Chesapeake moved for summary judgment. The trial court denied plaintiff’s motion, finding that LSA-R.S. 47:2231 et seq. and Section 31:117 of the Louisiana Mineral Code did not apply to this matter. The court also denied Chesapeake’s motion, finding that genuine issues of material fact remained in dispute.

. Plaintiff also contends the tax sale to Smith was an absolute nullity because Ebey was not provided notice of the 1987 tax sale. It asserts that Smith was never a proper owner of the property. Plaintiff also argues that Smith was an owner of the property; therefore, Smith should have been provided with notice of the 1988 tax sale.

. Former LSA-R.S. 47:2180 provided, in pertinent part:
A. On the second day of January each year, or as soon thereafter as possible, the tax collector shall address to each taxpayer who has not paid all the taxes, which have been assessed to him on immovable property, or to the record owner of the property for which the taxes are delinquent, or to the actual owner in the event the record owner is deceased, written or printed notice in the manner provided for herein that his taxes on immovable property must be paid within twenty days after the service or mailing of the notice, or that the property will be sold according to law.
B. The tax collector shall send to each taxpayer by certified mail, with return receipt requested, the notice prescribed herein, provided that in cities containing a population of over fifty thousand persons, the tax collector may either send this notice by certified mail or may make personal or domiciliary service on the taxpayer. In the event the certified notice is returned as being undeliverable by the post office, the tax collector may comply with Article 7 Section 25 of the Constitution of Louisiana and the provisions of this Section by advertising the tax debtor’s property in the advertising required for unknown owners in Subsection C of this Section. After the tax collector shall have completed the service by the notices herein required, either by mail or by personal or domiciliary service, he shall make out a process verbal stating therein the names of delinquents so notified, their post office address, a brief description of the property, the amount of taxes due and how the service of notice was made.
C.The tax collector shall publish one general notice substantially in the form set forth herein, addressed to all unknown owners of assessed immovable property situated in his parish, and to nonresident owners of such property whose post office address is unknown, in which he shall describe the property as described in the tax roll. Such notice shall be published once a week for two weeks in a newspaper published in his parish or if there be none published in the parish, then such notice shall be given in the manner provided by law for judicial sales.

. There is no indication in the record that the mailing to Smith was returned undelivered.

. LSA-R.S. 47:2231 provides:
After the tax sale certificate for adjudicated property is filed with the recorder of conveyances, the political subdivision may institute a suit in the district court of the parish in which the property is located to obtain possession of the adjudicated property. The suit shall be tried by summary proceeding and shall be prosecuted without costs of court to the political subdivision. Whenever revenue is received from the adjudicated property as provided in this Sub-part, the political subdivision shall pay the court costs out of the first revenue received.
LSA-R.S. 47:2232 provides:
Upon the presentation of a certified copy of the tax sale certificate, after ten days' notice to the owner and proper hearing, the judge shall grant an order of possession commanding the sheriff to place the political subdivision in actual possession of the adjudicated property.
LSA-R.S. 47:2233 provides:
The political subdivision, through its tax collector, upon taking or being placed in possession by judgment of court may, without the necessity of public letting, lease the adjudicated property on commercially reasonable terms and collect rentals. The political subdivision shall apply the rentals *130 first to the payment of all costs of court incurred in the proceeding. Thereafter, all rental income shall be applied against any taxes, charges imposed pursuant to R.S. 33:1236, or paving or other local improvement assessments due against the property. When all of the obligations have been paid in full, the political subdivision shall issue a proper certificate of redemption and surrender its possession of the property.

. LSA-R.S. 30:153(A) provides:
Any agency may. by resolution direct the State Mineral and Energy Board to lease its' land in the manner provided in Subpart A of this Part. The bonus money, if any, received for the lease shall be transmitted by the State Mineral and Energy Board to the agency. After the execution of the original lease, all rights and authority in connection therewith shall be vested in the agency to the same extent as if the agency had itself leased the land.
LSA-R.S. 30:124(B) provides:
The State Mineral and Energy Board, hereinafter referred to as the "board”, has authority to lease for the development and production of minerals, oil, gas, or alternative energy sources, any lands belonging to the state, or the title to which is in the public, including road beds, water bottoms, vacant state lands, and lands adjudicated to the state at tax sale. The board, in consultation with the Department of Transportation and Development, shall adopt rules and regulations in accordance with the Administrative Procedure Act to implement the provisions of this Subpart.

. It is well settled that mineral rights constitute a servitude or mere right to go upon the land and explore for and reduce to possession minerals. Barthold v. Dover, 153 So. 49 (La.2nd 1934), citing Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207 (1920).