MOORE, J.
*1182 Red Sox Investments LLC ("Red Sox"), and its proposed class of similarly situated property owners, appeal a judgment that sustained exceptions of no cause of action filed by, and dismissed all claims against, Caddo Parish and the City of Shreveport. For the reasons expressed, we affirm.
PROCEDURAL BACKGROUND
Red Sox filed this suit in May 2014, in the First JDC, alleging that the Parish and City failed to follow the procedures set out in La. R.S. 47:2231 -2234 for the lease of adjudicated property and the allocation of the rent payments generated. Prior to 2009, certain property owners had failed to pay their taxes: 39 individual lots of tracts were listed, but "500 properties more or less" were alleged to be affected. The Parish and City offered these lots at tax sales, but no one purchased them, so they were adjudicated to the Parish and City under La. R.S. 47:2196. Red Sox alleged that it acquired several of these lots by quitclaim deeds from the tax debtors, but admitted that it did not redeem any of them.
In 2009, the Parish and City, acting through the State Mineral and Energy Board, executed mineral leases covering areas that included the adjudicated properties. These leases gave the lessees no right to use the surface, but granted the executive right to explore for and extract minerals from the lands encompassed in each lease. The lessees made a bonus payment and committed to future royalties, a portion of which was attributable to the adjudicated properties.
Red Sox alleged that the Parish and City did all this without complying with Title 47, Chapter 5, Subpart C ("Political Subdivisions Acquiring Ownership"). R.S. 47:2231 says that after receiving an adjudication certificate, the political subdivision "may" file suit in district court "to obtain possession of the adjudicated property." R.S. 47:2232 says that upon presentation of a certified copy of the tax sale certificate, "after ten days' notice to the owner and proper hearing," the judge shall issue an order of possession in favor of the political subdivision. R.S. 47:2233 says that after receiving the order of possession, the political subdivision then "may, without the necessity of public letting, lease the adjudicated property on commercially reasonable terms and collect rentals." The political subdivision shall apply the rentals first to court costs, and then "all rental income shall be applied against any taxes * * * due against the property." Further, "When all of the obligations have been paid in full, the political subdivision shall issue a proper certificate of redemption and surrender its possession of the property." In other words, the leasing of adjudicated property is intended to benefit the tax debtor and result in ultimate redemption to the owner.
Red Sox alleged that the Parish and City did not file suit to obtain possession, did not give 10 days' notice to the owners, and, crucially, did not apply the signing bonus and royalty payments toward the unpaid taxes. In Red Sox's view, many of the adjudicated properties were small, and the signing bonus alone would have been sufficient to cover all back taxes and effect a redemption to the owners. It cited one specific tract (Lot 6, Happy Trails Subd.) that had been seized for nonpayment of 1990-'91 taxes, and was included in a mineral lease granted by the City in 2009. By Red Sox's reckoning, this lot earned some $6,798.98 in mineral revenue, an amount sufficient not only to pay all back taxes but to create revenue for the owner.
Red Sox concluded that the Parish and City's conduct was willful and constituted an illegal taking of property, an improper *1183 allocation of mineral revenues, and denial of due process. It demanded certification of the class of all affected owners of adjudicated properties. On behalf of the class, it demanded all monetary and other relief afforded by R.S. 47:2231 et seq., an accounting, and a permanent injunction.
The Parish and City filed separate exceptions of no cause of action.[1] The Parish argued that the cited tax statutes apply only to surface leases, not to mineral leases. The Parish showed that it leased only its inchoate rights to the minerals, as expressly authorized by the Mineral Code, La. R.S. 31:117, and did not impair any landowner's right to redeem his property. It also argued that it "was not required to undertake management of the property for another." The Parish cited a case from the First JDC, Sapphire Land Co. v. Chesapeake La. , in which Judge (now Justice) Scott Crichton had rejected exactly the same argument, concluding that in matters of mineral rights, the Mineral Code superseded the Tax Code, and that R.S. 47:2231 et seq. did not apply to mineral leases affecting adjudicated properties. The City fully adopted the Parish's position.
In May 2015, this court affirmed the district court case, Sapphire Land Co. v. Chesapeake La. , 49,712 (La. App. 2 Cir. 5/20/15), 172 So.3d 122. Our opinion held that under R.S. 47:2231, "the filing of a lawsuit to be placed in possession is discretionary." We further held that R.S. 47:2231 - 2233 "do not prohibit the state from leasing the minerals under the more specific provisions of the Mineral Code."
The Parish promptly reported this opinion to the district court, arguing that political subdivisions are specifically permitted to lease the minerals to "lands adjudicated," under R.S. 30:124 B. It argued that if R.S. 47:2231 -2233 did not apply to the grant of mineral leases, then Red Sox could not state a cause of action. The City adopted this argument.
ACTION OF THE DISTRICT COURT
The parties argued their exceptions over two days in June and August 2015. They stipulated that Red Sox acquired its property by quitclaim deed before the mineral leases were executed, thus creating a factual distinction from Sapphire Land . Red Sox urged that constitutional guarantees of due process and just compensation are overarching, are correctly enshrined in R.S. 47:2231 -2233, and cannot be preempted by R.S. 30:124 ; the taxing authority cannot "opt out of due process."
The Parish and City countered that the more specific provision of law should prevail, and while Title 47 appears to regulate tangible property and possessory rights, the Mineral Code is more specific to mineral leases; in fact, Sapphire Land held precisely this. Aware that the plaintiff in Sapphire Land had taken writs, the district court deferred ruling.
In November 2015, the Supreme Court denied writs, Sapphire Land Co. v. Chesapeake La. , 2015-1372 (La. 11/6/15), 180 So.3d 307.
At a brief hearing in January 2016, the district court granted the Parish's and City's exceptions of no cause of action. The judgment gave Red Sox 30 days to amend its petition to state a cause, and dismissed all other exceptions and incidental actions as moot.
Red Sox filed a supplemental and amending petition reiterating its original allegations, but adding that to apply *1184 Sapphire Land would deny them due process under Mennonite Bd. of Missions v. Adams , 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), and claiming attorney fees under R.S. 13:5111 A (compensation for taking other than by expropriation).
In April 2016, the City removed the case to the Western District of Louisiana, where the Parish filed a motion to dismiss the amended petition for lack of subject matter jurisdiction, FRCP 12(b)(6). The federal district court found that because no plaintiff had actually redeemed any of the adjudicated tracts, there was no property interest subject to Mennonite notice. The court dismissed the claim, without prejudice, and, in December 2016, remanded the case to the First JDC.
Once the case was remanded, Red Sox took this devolutive appeal.[2]
THE PARTIES' POSITIONS
Red Sox designates three assignments of error. First, the court erred in finding that taxing authorities who execute mineral leases covering tax-adjudicated property have no legal or constitutional obligation to apply the revenues from those mineral leases to the past-due taxes. Second, the court erred in finding that those taxing authorities also have no legal or constitutional obligation to remit to the property owner the portion of revenues from those mineral leases that exceeds the past-due tax. Third, the court erred in finding that the owners of tax-adjudicated properties have no legally recognized cause of action to recover losses and damages occasioned by this conduct. Red Sox analogizes its position to that of a citizen who owes $1,000 in income tax: unsatisfied with her payment efforts, the state could seize her bank account. However, if the bank account has a balance of $2,500, the state cannot keep the extra $1,500; "that's just fundamental fairness." Red Sox argues that unless the protections of Title 47 are honored, the Parish and City can collect $10,000 in bonus money against $100 in taxes, and the taxpayer receives nothing.
Red Sox concedes that the government's authority to execute mineral leases has been litigated in Sapphire Land Co. , but suggests the case is not binding because it involved third-party plaintiffs who acquired the property after the adjudication and subject to the mineral leases, while Red Sox acquired its property before adjudication, and that the plaintiffs in Sapphire Land Co. were trying to annul the mineral leases, which Red Sox is not seeking. Red Sox also argues that a separate opinion in Sapphire Land Co. , dissenting from the denial of rehearing, should be followed rather than the majority opinion. It asks this court to reverse and remand.
The Parish responds that this court has already determined that the referenced tax statutes do not apply to mineral leases, in Sapphire Land Co. , supra . Specifically, R.S. 47:2233 refers to the political subdivision "taking or being placed in possession" of the property, but physical possession is not required for the grant of a mineral lease; only an executive right is required. La. R.S. 31:117. Also, Mineral Code provisions are more specific and thus supersede general laws. La. R.S. 31:2. The Parish concedes that Red Sox might have a stronger argument if it, or any putative class member, had attempted to redeem the property or to lease its inchoate mineral *1185 rights; however, none of them did so. Even if the tax statutes applied, the Parish suggests, there would be no cause of action because the tax debtor was never improperly dispossessed of his property. The Parish seeks affirmance.
The City fully adopts the Parish's argument, adding only that Red Sox also failed to state a right of action, a deficiency that would support the finding of no cause, Schexnayder v. Gish , 41,819 (La. App. 2 Cir. 2/7/07), 948 So.2d 1259. The City also seeks affirmance.
DISCUSSION
The fundamental issue in this case was resolved in Sapphire Land Co. , supra . There, someone named Ebey bought two acres of land in 1986 but failed to pay the property taxes; someone named Smith bought the property at tax sale; neither Ebey nor Smith ever redeemed the property or paid the taxes. In 1988, the property was adjudicated to the parish. In 2009, the parish leased the property for mineral exploration. In 2010, Sapphire bought Ebey's and Smith's interests by quitclaim deeds, and paid the 1987 taxes on the property. Sapphire then sued the lessee alleging, inter alia, that the parish failed to allocate any of the bonus revenue or royalty payments to past due taxes as required by R.S. 47:2233. After trial on the merits, the district court rejected Sapphire's claims.
On appeal, this court affirmed. We stated that Title 47 authorized a political subdivision to take ownership of property adjudicated to it following a tax sale; that the political subdivision may (but is not required to) file a petition to be placed in actual possession of the property; and it may then lease the adjudicated property and collect the rent. We then held (with emphasis added , footnotes omitted):
In the instant case, it is undisputed that Caddo Parish did not institute a lawsuit to take possession of the property prior to entering into the mineral lease. Under the provisions set forth in R.S. 47:2231 and 2233, the filing of a lawsuit to be placed in possession is discretionary. Also, these provisions do not prohibit the state from leasing the minerals under the more specific provisions of the Mineral Code. * * * We note that the parish did not lease the property itself; it merely leased the mineral rights, which are neither assessable nor taxable. See, La. Const. Art. VII §§ 4 and 21. Therefore, we find that the trial court did not err in concluding that the provisions set forth in Title 47 of the Revised Statutes do not apply to the mineral lease.
The repeated reference to "possession" in R.S. 47:2231 -2233 shows an intent to protect the tax debtor's possessory rights. However, the mineral leases in this case do not allow surface operations or other use of the underlying property. Nothing about the mineral leases evicted Red Sox from the adjudicated property. By plain reading, Title 47 does not apply to this case. We see no basis to overrule our rationale in Sapphire Land Co.
Moreover, the provisions of Titles 30 and 31, being more specific, apply to mineral leases. South Lafourche Levee Dist. v. Jarreau , 2016-0788 (La. 3/31/17), 217 So.3d 298 ; Horil v. Scheinhorn , 95-0967 (La. 11/27/95), 663 So.2d 697. In particular, La. R.S. 30:124 B authorizes the State Mineral Board to grant mineral leases of all state properties, including lands adjudicated through tax sale:
B. The State Mineral and Energy Board, hereinafter referred to as the "board", has authority to lease for the development and production of minerals, oil, gas, or alternative energy sources, any lands belonging to the state, or the title to which is in the public, including *1186 road beds, water bottoms, vacant state lands, and lands adjudicated to the state at tax sale.
* * *
The State Mineral Board is also empowered to act on behalf of any "agency," defined in La. R.S. 30:151 to include any parish or municipality. However, under R.S. 30:153 A, all bonus money from such leases is paid to the agency:
Any agency may by resolution direct the State Mineral and Energy Board to lease its land in the manner provided in Subpart A of this Part.[3] The bonus money, if any, received for the lease shall be transmitted by the State Mineral and Energy Board to the agency. After the execution of the original lease, all rights and authority in connection therewith shall be vested in the agency to the same extent as if the agency had itself leased the land.
Even if an owner has only an executive interest, La. R.S. 31:117 authorizes him to lease it:
A mineral lease may be granted by the owner of an executive interest whose title is extinguished at a particular time or upon the occurrence of a certain condition, but it terminates at the specified time or on occurrence of the condition diverting the title.
The purchaser at a tax sale acquires an inchoate or contingent right. Wells v. Joseph , 95 So.2d 843 (La. App. 2 Cir. 1957), aff'd , 234 La. 780, 101 So.2d 667 (1958). Under R.S. 30:153 and 31:117, a parish or city owning such an interest may grant a mineral lease on it. Under R.S. 31:117, Red Sox would also be at liberty to grant mineral leases over its contingent or executive interest. In light of this fact, it is immaterial that Red Sox acquired its interest by quitclaim deed before the parish and city executed the mineral leases. Plainly, no action of the parish or city divested Red Sox, or other affected owners, of the right to grant mineral leases on their executive interests.
The exception of no cause of action tests the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged therein. Moreno v. Entergy Corp. , 2010-2268 (La. 2/18/11), 64 So.3d 761 ; B.A. Kelly Land Co. v. Questar Expl. & Prod. Co. , 47,509 (La. App. 2 Cir. 11/14/12), 106 So.3d 181, writ denied , 2013-0331 (La. 4/19/13), 112 So.3d 223. Our conclusion is that the parish and city acted completely within the authority granted by Titles 30 and 31, and were not required to follow the additional procedures of Title 47. Moreover, Red Sox was deprived of no right to lease its own executive mineral interests. For these reasons, the petition does not state any grounds for relief: there was no illegal taking of property, no improper allocation of mineral revenues, no denial of due process, and no right to claim the protections of Title 47. The district court did not err in sustaining the exception of no cause of action.
CONCLUSION
For these reasons, the judgment is affirmed. Costs are to be paid by Red Sox Investments LLC.
AFFIRMED .

The City also filed an exception of no right of action, and the Parish, exceptions of no right and of improper cumulation of parties and claims. In addition, the Sheriff of Caddo Parish and the Caddo Parish School Board filed petitions of intervention. All these incidental claims were mooted by the finding of no cause.

By reply brief, the Parish questioned whether the judgment was appealable, as the First JDC had never ruled on Red Sox's Mennonite claim. In fact, this court has dismissed appeals in such circumstances, Riddle v. Simmons , 548 So.2d 113 (La. App. 2 Cir. 1989), Minnieweather v. Brumley , 602 So.2d 1062 (La. App. 2 Cir. 1992). At oral argument, however, counsel for Red Sox conceded that its amended petition was "moot" and thus would not lead to piecemeal litigation.

Subpart A includes Section 134.